IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LONGBEAM TECHNOLOGIES LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 21-1559 (CFC) |
| AMAZON.COM, INC. and | ) | |
| AMAZON WEB SERVICES, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

OF COUNSEL:
Adam M. Greenfield
Maximilian A. Grant
Gabriel K. Bell
David A. Zucker
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
(202) 637-2200

Kimberly Q. Li
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

February 28, 2022

Jeremy A. Tigan (#5239)
Morris Nichols Arsht & Tunnell
LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jtigan@morrisnichols.com

*Attorneys for Defendants
Amazon.com, Inc. and Amazon Web
Services, Inc.*

## **TABLE OF CONTENTS**

I.     NATURE AND STAGE OF PROCEEDINGS ................................................1

II.    SUMMARY OF ARGUMENT .........................................................................1

III.   STATEMENT OF FACTS ...............................................................................3

       A.     The Patents' Written Descriptions .......................................................3

       B.     The Patent Claims ...............................................................................5

IV.    LEGAL STANDARDS ...................................................................................9

V.     ARGUMENT ...................................................................................................10

       A.     The Claims Are Directed to the Abstract Idea of Controlling
              Access to Information Based on Location ..........................................10

              1.     The '316 Patent Claims Are Directed to the Abstract Idea ......10

              2.     The '418 Patent Claims Are Directed to the Abstract Idea ......15

              3.     The '627 Patent Claims Are Directed to the Abstract Idea ......17

              4.     The '989 Patent Claims Are Directed to the Abstract Idea ......19

       B.     The Claim Elements, Individually or Collectively, Add Nothing
              Inventive Apart from the Abstract Idea ..............................................21

              1.     The '316 Patent Claims Add Nothing Inventive .....................21

              2.     The '418, '627, and '989 Patent Claims Add Nothing
                     Inventive ..................................................................................22

       C.     The Claims Should Be Held Ineligible on the Pleadings ....................24

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**CASES**

*Aatrix Software Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018) ...........................................................25

*Affinity Labs of Tex., LLC v. DirecTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016) ...........................................................25

*Alice Corp. v. CLS Bank Int'l*,
  573 U.S. 208 (2014).......................................................................*passim*

*Bridge & Post, Inc. v. Verizon Communications, Inc.*,
  778 F. App'x 882 (Fed. Cir. 2019) ................................................*passim*

*BSG Tech LLC v. BuySeasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018) .......................................14, 21, 22, 24

*Chamberlain Group, Inc. v. Techtronic Industries Co.*,
  935 F.3d 1341 (Fed. Cir. 2019) ...........................................................25

*ChargePoint Inc. v. SemiConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019) .........................................................9, 11

*Cisco Sys., Inc. v. Uniloc 2017 LLC*,
  813 F. App'x 495 (Fed. Cir. 2020) .......................................................25

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014) ...........................................................14

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
  815 F. App'x 529 (Fed. Cir. 2020) ................................................*passim*

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
  958 F.3d 1178 (Fed. Cir. 2020) ...........................................................24

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) ...........................................................22

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
  955 F.3d 1317 (Fed. Cir. 2020) .....................................................*passim*

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015) ...............................................................2, 13, 24

*Intellectual Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016) ............................................................10, 11, 12

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
  696 F. App'x 1014 (Fed. Cir. 2017) ................................................................12

*RecogniCorp, LLC v. Nintendo Co.*,
  855 F.3d 1322 (Fed. Cir. 2017) ................................................................11, 20

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018) ...........................................................*passim*

*Simio, LLC v. FlexSim Software Prods., Inc.*,
  983 F.3d 1353 (Fed. Cir. 2020) ................................................................22, 25

*Smartflash LLC v. Apple Inc.*,
  680 F. App'x 977 (Fed. Cir. 2017) ..................................................................13

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017) ..........................................................10, 13, 25

*Universal Secure Registry LLC v. Apple Inc.*,
  10 F.4th 1342 (Fed. Cir. 2021) ...........................................................*passim*

## STATUTES

35 U.S.C. § 101 .....................................................................................*passim*

## I.    NATURE AND STAGE OF PROCEEDINGS

Plaintiff Longbeam Technologies LLC ("Longbeam") alleges infringement of U.S. Patent Nos. 10,715,316 ("'316 patent"); 7,660,418 ("'418 patent"); 8,472,627 ("'627 patent"); and 7,512,989 ("'989 patent") (collectively, "asserted patents"). D.I. 18 ("Complaint").  Defendants Amazon.com, Inc. and Amazon Web Services Inc. move to dismiss with prejudice per Rule 12(b)(6) because the asserted patents' claims are directed to patent-ineligible subject matter under 35 U.S.C. § 101.

## II.    SUMMARY OF ARGUMENT

The claims of the asserted patents are patent-ineligible, and thus invalid, under § 101.  Patent claims are ineligible if they (1) focus on an abstract idea and (2) add nothing significantly more (i.e., nothing inventive) to that idea.  *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216-18 (2014).  Longbeam's claims fail that threshold test.

At *Alice* step one, all of the asserted patents' claims are directed to the abstract idea of controlling access to information based on recipient location, with minor variations.  *See* '316 patent, 1:22-24 ("controlling access to digital data … based on location"); '418 patent, Abstract ("information can only be accessed at [a] specific geographic location"); '627 patent, 1:20-25 (similar); '989 patent, 2:19-22 ("the information can only be communicated or accessed at specified locations.").  That is fundamentally a human problem, not a technological one.  For example, local newspapers have long controlled access and tailored information based on customer

1

location—delivering only to customers within a certain area, and delivering a version with local news and advertisements based on the customer's address.

At *Alice* step two, the claims add nothing inventive apart from the abstract idea, and instead recite non-specific implementations using conventional techniques and components. The patents acknowledge that the purported invention requires only conventional, generic computer components ("[e]lectronic devices, systems, networks, and the like"). *E.g.*, '316 patent, 7:20-27. The claims of three patents ('418, '627, and '989) recite "encrypting" data. But the patents admit that encryption is commonplace, *see* '418 patent, 1:60-1:63; '627 patent, 1:43-56; '989 patent, 1:33-36, and require no new encryption methods—any "known encryption algorithms" can be used. '418 patent, 14:17-19; *see* '627 patent, 15:42-46; '989 patent, 1:32-67.

The Federal Circuit has repeatedly found ineligible claims for "controlling access to resources via software," *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1326 (Fed. Cir. 2020), and "tailor[ing] [digital] content based on the viewer's location," *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("*Capital One*"). *See also Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342 (Fed. Cir. 2021) (ineligible claims for authenticating access based on user data and encryption). The patent claims here are likewise ineligible.

## III.   STATEMENT OF FACTS

The '316, '418, and '627 patents are related and share common inventors.[1] The '989 patent was prosecuted by the same now-defunct company (Geocodex LLC, whose assets Longbeam purchased), and is directed to the same subject matter.[2]  All four patents are directed to controlling access to information based on location, with minor variations.

### A.   The Patents' Written Descriptions

The written descriptions acknowledge that the purported inventions focus on "controlling access to digital data … based on location." '316 patent, 1:22-24; *see also* '418 patent, Abstract ("controlling access to digital information" based on "location"); '989 patent, 5:49-52 ("information [may] only be communicated or accessed at specified locations").  As the patents depict, this simply means allowing access to information (e.g., movies) in location A, but not location B:

---

[1] The '316 and '627 patents share a written description, and the '418 patent's is similar.  Parallel citations to those written descriptions are often omitted for brevity.

[2] The Patent Office recognized that the '989 patent claims overlap with the family of the other asserted patents—initially rejecting the '989 patent claims as "not patentably distinct from" the parent of the '627 patent, leading to terminal disclaimer.  Ex. A, 2-3.



'316 patent, fig.1.

The written descriptions admit further that no new technology is required. The devices that send and receive information can be part of *any* "communication system." *Id.* at 8:54-65; '418 patent, 19:43-45. *Any* network and *any* manner of communication can be used to send *any* type of information. '316 patent, 9:20-28; 23:45-50; '989 patent, 2:42-45, 4:66-5:3. Detecting the user's location also was conventional, using existing "GPS receivers (or other method[s])." '316 patent, 10:27-31; '418 patent, 10:14-28 ("commercial[ly] availabl[e] GPS receivers"); '989 patent, 2:66-3:4.

The patents also admit that encryption was conventional for controlling access to information.  *See* '418 patent, 1:60-62 ("Cryptographic systems … historically provide[d] information security and access control"); '627 patent, 1:57-60 ("widely adopted"); '989 patent, 1:33-47 ("commonly used").  The purported invention requires no new encryption—*any* "known encryption algorithms could … be advantageously utilized."  '418 patent, 14:15-19; '627 patent, 15:42-46 ("*any* … method of encryption").[3]

## B.     The Patent Claims

The claims of each asserted patent recite basic steps for controlling access to information based on the recipient's location.  The Complaint asserts only one claim from each patent.  Those claims are representative of their respective patents and set forth below.

---

[3] All emphases added unless noted.

The '316 patent claims recite basic steps for "controlling access to … digital files" by associating each file with a "location identity" and providing the file only if the requester's location "matches" the file's location.  Representative claim 12 recites:

> **12**. An apparatus for controlling access to digital information, said digital information comprising a plurality of digital files, comprising:
>
> at least one memory device for storing a location identity for each one of said plurality of digital files, said location identity being received from a corresponding producer device via a network and comprising a location value and a proximity value, said location value comprising a geographical location and said proximity value identifying a geographical region in relation to said geographical location;
>
> at least one application processor in communication with said at least one memory device and configured to (i) prompt a receiver to provide its location to a distributor device, (ii) receive a current location from said receiver device, (iii) receive a request for data from said receiver, and (iv) select one of said plurality of files based on said current location of said receiver and said requested data, said selected one of said plurality of digital files including said data and having a location identity that matches said current location of said receiver device, wherein at least a first other one of said plurality of digital files includes said data but does not match said current location and at least a second other one of said plurality of digital files matches said current location but does not include said data;
>
> wherein said selected one of said plurality of digital files is provided to a user of said receiver device;
>
> wherein said one of said plurality of digital files is selected in response to receiving said request for said data.

The '418 patent claims recite "inhibiting" access to files using encryption unless the user's device is in "a specific geographic location."  Representative claim 12 recites:

> **12**. A file management system for use in an information processing device, the file management system comprising executable instructions fixed in a suitable medium and operable to perform the functions of:
>
> selecting location data corresponding to a specific geographic location at which access rights for a selected file by the information processing device is permitted;
>
> generating a location attribute value based in part on the location data;
>
> associating the location attribute value with the selected file; and
>
> inhibiting file management operations pertaining to the selected file, including any copying, saving and deleting of the selected file, unless a current location of the information processing device corresponds to the location attribute value;
>
> wherein the location attribute value is based in part on an area parameter defining a shape of a region that encompasses the specific geographic location;
>
> wherein the functions further include generating an encrypting key based on the area parameter; and
>
> wherein the associating function further comprises encrypting the selected file using the encrypting key.

7

Similarly, the '627 patent claims recite decrypting data only when a "content-owner constraint" (such as location) is satisfied.[4]  Representative claim 22 recites:

> **22**. A method for controlling access to content data, comprising:
>
>   a distributor device (i) using a data encrypting/decrypting key to encrypt the content data, (ii) using a key encrypting/decrypting key to encrypt both the data encrypting/decrypting key and at least one content-owner constraint, and (iii) sending the encrypted content data, the encrypted data encrypting/decrypting key and the at least one encrypted content-owner constraint to a receiver device via a communication network; and
>
>   a receiver device (i) receiving via the communications network the encrypted content data, the encrypted data encrypting/decrypting key and the at least one encrypted content-owner constraint, (ii) decrypting both the encrypted data encrypting/decrypting key and the at least one encrypted content-owner constraint, (iii) decrypt the encrypted content data if the at least one content-owner constraint is satisfied, (iv) using a second key encrypting/decrypting key to re-encrypt the data encrypting/decrypting key, and (v) sending the encrypted content data and the re-encrypted data encrypting/decrypting key to at least one other receiver device via the communications network.

---

[4] Longbeam asserts that "geographical location" is a "content-owner constraint," Compl. ¶ 95, which the Court can accept for purposes of this motion.  But the patent does not explain that term and Amazon reserves the right to argue it is indefinite.

Likewise, the '989 patent claims use a "customer location value" to encrypt data, such that the encryption can be "remove[d]" only when the "current location value" matches the "customer location value." Representative claim 31 recites:

> **31.** A method for communicating data to a recipient device, comprising:
>
> using a data encryption key to apply a first layer of encryption to said data;
>
> using at least a customer location value to apply a first layer of encryption to said data encryption key, said customer location value being generated using at least an authorized location of said recipient device;
>
> transmitting, at least indirectly, said encrypted data and said encrypted data encryption key to said recipient device;
>
> determining a current location of said recipient device;
>
> using at least said current location of said recipient device to generate a current location value;
>
> using at least said current location value to remove said first layer of encryption from said data encryption key if said current location value is consistent with said customer location value; and
>
> using said data encryption key to remove said first layer of encryption from said data.

## IV. LEGAL STANDARDS

The *Alice* framework governs whether computer-based patent claims are ineligible under § 101. 573 U.S. at 217-27. First, the Court determines whether the claims are, at root, directed to an abstract idea despite their computer features. *Id.* at 218. The Court evaluates the "focus of the claims" to determine if the claims' "character as a whole is directed to [an abstract idea]," such as a longstanding human concept or activity. *ChargePoint Inc. v. SemiConnect, Inc.*, 920 F.3d 759, 765, 769 (Fed. Cir. 2019) (citations omitted). Second, the Court determines whether other

9

claim elements, individually or collectively, add "significantly more"—something "inventive"—*apart* from the abstract idea. *Alice*, 573 U.S. at 217-22.

Allegedly patent-eligible subject matter cannot stem from the abstract idea itself. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018). Implementing an abstract idea in a "'particular … technological environment'" with conventional computer technology does not make the claims "'any less abstract'" and contributes nothing inventive. *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314-16 (Fed. Cir. 2016) ("*Symantec*").  Nor may claims recite "'generic functional language to achieve [the] purported solutions'" without claiming "'*how* the desired result is achieved.'"  *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017).

Patent-ineligibility is a threshold issue that "may be, and frequently has been, resolved on a Rule 12(b)(6)" motion.  *SAP*, 898 F.3d at 1166.

## V.   ARGUMENT

The asserted patents' claims are ineligible under § 101 as a matter of law because they are each directed to an abstract idea and add nothing inventive.

### A.   The Claims Are Directed to the Abstract Idea of Controlling Access to Information Based on Location

#### 1.   The '316 Patent Claims Are Directed to the Abstract Idea

The '316 patent claims are directed to the abstract idea of controlling access to information based on location.  Representative claim 12 broadly recites an

"apparatus for controlling access to … digital files" by (1) storing a file's "location identity"; (2) receiving a request for the file; and (3) providing the file only if its location identity "matches [the] current location" of the requester.  '316 patent, cl. 12; *see id.* at Abstract (purported advance is controlling access based on recipient's location).  That results-oriented language is "directed to an abstract end-result," not any "'specific means or method' for improving technology."  *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017).

Humans have long controlled access to information based on recipient location.  Local newspapers deliver copies only to customers in a particular region and often tailor content (e.g., advertisements) based on the customers' location.  The written description confirms that such location-based access-control is the focus of the purported invention.  *See*, *e.g.*, '316 patent, Abstract ("Access to digital data is provided based on a specific location"), 1:20-24 ("controlling access to digital data … based on location), 7:35-37, 11:54-61, 13:1-6; *see also ChargePoint*, 920 F.3d at 767 (written description useful in determining focus of claimed invention).  Indeed, the purported invention provides information that is "pertinent" based on location—"e.g., local area for weather, store location for sale and advertising information, etc." '316 patent, 29:43-45.

On its face, therefore, claim 12 is directed to a quintessentially abstract idea for "organizing human activity."  *Symantec*, 838 F.3d at 1313.  Performing it in a

"particular technological environment" using generic computer technology (e.g., a "memory device," "processor," and other black-box "device[s]" to send and receive data) does not make the claims "any less abstract." *Id.*; *see* '316 patent, cl. 12, 7:14-26 (any "electronic devices" that perform claimed functions).

The Federal Circuit has "*repeatedly* found the concept of controlling access to resources via software to be an abstract idea." *Ericsson*, 955 F.3d at 1327. In *Ericsson*, the court found ineligible a "system for controlling access to a platform" by matching a stored "identification." *Id.* at 1325-26. Although "written in technical jargon," the claims "at the[ir] core" were "directed to the abstract idea of controlling access to resources using software" and thus ineligible. *Id.* at 1326. That was "exactly the sort of process that 'can be performed in the human mind, or by a human using a pen and paper.'" *Id.* at 1327 (citation omitted). So too here.

Similarly, in *Universal Secure*, the detailed claims recited an "electronic ID device" using multifactor authentication based on encryption and the user's characteristics (e.g., "biometric measurement[s]") to control access to a secure registry. 10 F.4th at 1350-51. But the claims were abstract and ineligible because they provided no "specific technical solution" or improvement in the underlying technology. *Id.* at 1352; *see also Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529 (Fed. Cir. 2020) (ineligible claims for controlling access based on "path trust level" and "encryption trust level"); *Prism Techs. LLC v. T-Mobile USA, Inc.*,

696 F. App'x 1014, 1016 (Fed. Cir. 2017) (ineligible claims for "receiving" identity data, "authorizing" computer, and "permitting access"); *Smartflash LLC v. Apple Inc.*, 680 F. App'x 977, 979 (Fed. Cir. 2017) (ineligible claims for "us[ing] rules to determine whether access is permitted"). Claim 12 here is far more abstract and ineligible than those ineligible access-control claims.

The Federal Circuit has also repeatedly found ineligible claims for tailoring information based on the user's location or other characteristics. In *Capital One*, the claims recited a system for "tailoring content based on the viewer's location or address." 792 F.3d at 1369. The Court explained that "information tailoring is 'a fundamental ... practice long prevalent in our system'"—"for example, a newspaper might advertise based on the customer's location." *Id.* In *Bridge & Post, Inc. v. Verizon Communications, Inc.*, the claims recited computer systems for "[t]ailoring advertisements based on real-time information about the user and their location." 778 F. App'x 882, 884 (Fed. Cir. 2019). Although the claims recited technological components, such as a "routing device," "client and server computers," and a "remote authentication server," they were at root directed to a "'fundamental practice' that dates back to newspaper advertisements." *Id.* at 887. Claim 12 of the '316 patent is equally abstract and ineligible. As in such cases, claim 12 "us[es] result-based functional language … but does not sufficiently describe how to achieve these results in a non-abstract way." *Two-Way Media*, 874 F.3d at 1337.

13

Other claims of the '316 patent fare no better.[5]  Independent claims 1 and 23 recite the same generic, results-oriented functions as claim 12, albeit couched as "methods" instead of an "apparatus."  That makes no difference.  *Alice*, 573 U.S. at 226 (computer "method" and "system" claims "fail for substantially the same reasons").  Those claims are, therefore, directed to the same abstract idea.

The dependent claims (2-11, 13-22, 24-30) add limitations that do not change the claims' focus on the abstract idea.  Claims 10, 21, and 27 restate the abstract idea ("determining whether said current location is within said geographical region").  The rest recite inconsequential details or conventional functionality for implementing the idea: the file is an advertisement (6, 17); the location is determined by "latitude and longitude," a "circular" region, "time," or "a GPS receiver" (2-4, 7-8, 13-15, 18-20, 24-26); the "distributor device" forwards information (22, 28, 29); and information is stored in memory (5, 9, 11, 16) or encrypted (30).  Such "minimal narrowing" does not change the claims' focus on the abstract idea.  *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1287 (Fed. Cir. 2018); *SAP*, 898 F.3d at 1169 (dependent claims merely "further narrow[]" abstract idea).  Consequently, all '316

---

[5] The Court can find all of the asserted patents' claims ineligible based on their respective representative claims.  *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (holding 242 claims ineligible based on two representative claims because all were "substantially similar and linked to the same abstract idea").  But, as explained, the claims are ineligible even when considered individually.

patent claims are directed to the abstract idea of controlling access to information based on the user's location.

### 2.    The '418 Patent Claims Are Directed to the Abstract Idea

The '418 patent claims are directed to the same abstract idea, couched in nominally different terms and using encryption.  Representative claim 12 recites a "file management system" that (1) selects a "geographic location at which access rights for a selected file … is permitted"; (2) "associate[s]" that file with the permitted location by "encrypting" it; and (3) "inhibit[s]" access to the file unless the accessing device's current location "corresponds to" the permitted location.

The other independent claims (1, 23) recite a "device" and "method" that perform the same steps as claim 12—which does not alter the analysis.  *Alice*, 573 U.S. at 226.  The dependent claims recite ancillary limitations in service of the independent claims: "retrieving" or "recovering" location data (2-3, 13-14, 24-25); saving, copying, or managing data (4-8, 10-11, 15-19, 21-22, 26-30, 32-33); or stating that location data is "a latitude and longitude" (9, 20, 31).

Thus, every claim focuses on the same abstract idea of using encryption to control access to information based on the recipient's location.  The written description confirms as much, describing the alleged invention as "controlling access to digital information … such that the digital information can be accessed only at the specified geographic location."  '418 patent, 4:10-16, 4:42-44.  As

discussed, that abstract idea is firmly rooted in human experience.

The '418 patent claims (like the '316 patent claims) are similar to the access-control claims that the Federal Circuit held ineligible in *Ericsson*, *Universal Secure*, *Dropbox*, and others. *Supra* at 12-13. As in those cases, the '418 patent claims recite controlling access ("inhibiting … copying, saving, and deleting") based on whether an identification ("current location") "corresponds to" the "geographic location at which access … is permitted." *E.g.*, '418 patent, cl. 12.

That the '418 patent claims use encryption does not make them less abstract. The claims recite generating an "encrypting key," and then "associating" each file with a permissible geographic area by "encrypting" the file using the generated key. *E.g.*, *id.* However, the '418 patent uses conventional encryption—"known encryption algorithms" can be used. '418 patent, 14:5-25. The '418 patent also does not purport to invent location-based authentication, instead using "commercial availability … GPS." *Id.* at 10:26-28.

The Federal Circuit has held that such conventional encryption does not make claims non-abstract. *See Universal Secure*, 10 F.4th at 1352 (ineligible claims recited "generat[ing] encrypted authentication information from … biometric input and … secret information"); *Dropbox*, 815 F. App'x at 533 (ineligible claims recited an "access request … encrypted with an encryption method [and] encryption trust level); *Bridge & Post*, 778 F. App'x at 888 (ineligible claims recited "generating a

16

request identifier … by combining and encrypting … the local user identifier … and geographic location"). Here, as in those cases, the claimed "encrypting key" and "area parameter" are "merely a collection of conventional data combined in a conventional way that achieves only expected results," and thus do not make the claims non-abstract. *Universal Secure*, 10 F.4th at 1352.

### 3.    The '627 Patent Claims Are Directed to the Abstract Idea

Likewise, the '627 patent claims are directed to the abstract idea of controlling access to information, using encryption, based on user attributes (such as location). Representative claim 22 recites "a method for controlling access to content data" in which (1) a distributor device "encrypts" "content data," along with a "content-owner constraint" and a "data encrypting/decrypting key"; and (2) a receiver device receives those items, but only "decrypt[s] the encrypted content data" if the "content-owner constraint is satisfied." Claim 1 recites a "system" for performing the same steps, and (redundantly) recites that a "cryptographic engine" within each device is "enable[d]" to perform the stated functions. But the written description does not define "cryptographic engine," and abstract claims are still abstract when written in "technical jargon." *Ericsson*, 955 F.3d at 1326.

The '627 patent claims are directed to an abstract idea, like the '316 and '418 patent claims. *Supra* at 11-17; *Ericsson*, 955 F.3d at 1327; *Universal Secure,* 10 F.4th at 1351. The '627 patent claims are even broader, controlling access not just

based on recipient location but on *any* (unspecified) "content-owner constraint." Again, use of admittedly conventional encryption does not change that conclusion. *Supra* at 16-17; *Universal Secure*, 10 F.4th at 1351.

The remaining limitations do not change the claims' focus on that abstract idea. The independent claims (1, 22) merely recite conventional functions for transmitting data and encryption/decryption keys between the claimed "distributor" and "receiver" devices to accomplish the abstract idea. The dependent claims (2-21, 23-43) provide inconsequential details: a device is "tamperproof" (11-12, 42-43); a content-owner constraint is time-based (8, 10, 29, 31) or geographical (9, 30); a "key identifier" is used (6, 27); stating which generic device generates the key (3-5, 24-26) or performs the encrypting/decrypting (2, 7, 13, 13, 28, 32); or a second content-owner constraint (14-16, 33-35) or second receiver (17-21, 36-41) is added to perform the same functions. None changes the focus of the purported invention, as "the manner in which the … receiver devices … and distributor devices communicate *is not critical to the invention*," and "secret keys are transmitted from one place to another *using the same techniques as for distributing any form of digital data*." '627 patent, 9:6-11, 3:67-4:2. Rather, "the present invention relates to … encrypting digital data in a communication network in such a manner that it can be decrypted only at a specified location and using a secret key"—i.e., the abstract idea. *Id.* at 1:22-25. Other limitations are "nothing more than a computer-

implementation" of that abstract idea.  *Bridge & Post*, 778 F. App'x at 887.

### 4.     The '989 Patent Claims Are Directed to the Abstract Idea

The claims of the '989 patent parallel the claims of the '627 patent, substituting an "authorized location" for the nebulous "content-owner constraint." Representative claim 31 recites "a method for communicating data" in which (1) an "authorized location" is used to apply encryption; (2) the encrypted data and key are "transmit[ted]" to a "recipient device," and (3) the encryption is removed only if the recipient's "current location" is "consistent with" the "authorized location."  '989 patent, cl. 31.  Like the other claims discussed, claim 31 is directed to the abstract idea of controlling access based on location using encryption.

The written description confirms that the alleged invention is "encrypt[ing] the digital data using a location-identity that permits the digital data to be transferred only if the [recipient] is disposed at an appropriate location."  *Id.* at 2:39-45.  The written description also admits that the military long used this concept: encryption keys stored and transported in physical devices ("loaders") could decrypt information only at specific locations (using a cable-based connection to the "recipient device").  '989 patent, 1:52-63; *see id.* at 2:30-3:4.

At most, claim 31 recites the combination of location-based access control and encrypting/decrypting.  But "[a]dding one abstract idea ([location-based access control]) to another abstract idea (encoding and decoding) does not render the claim

non-abstract." *RecogniCorp,* 855 F.3d 1322 at 1326.  Indeed, one ineligible claim in *Bridge & Post* recited providing information based on location, and included steps for (1) "generating a request identifier … by *combining and encrypting* … the local user identifier … and *geographic location* and demographic information" and (2) "providing appropriate decoding tools to the server computer to perform a decoding operation on the tagged request to decode the request identifier."  778 F. App'x at 888; *see also Universal Secure*, 10 F.4th at 1352; *supra* at 17.  Here, as there, simply performing encryption based on location is patent-ineligible.

The other independent claims are directed to the same abstract idea, restating the same functionality as an "apparatus" (1, 9); "system" (27); "method" (21); or "network" (14) with varying "level[s] of encryption."  The same is true of the dependent claims.  One group simply reinforces the abstract idea of location-based access control using encryption by adding additional levels of encryption (15, 22, 32, 35-39) or additional devices performing the same functions (2, 16, 17-19, 23-25).  The rest add inconsequential features: location is obtained by GPS (3-4, 8, 10); a device is portable (17); data comes from a "centralized location" (34) or resides in "memory" (11-13); or adding motion detectors (5, 18), "key IDs" (33), timers (7, 30), alarms (6, 29), and unspecified "auxiliary data" (20, 26).  None makes the claims non-abstract.  *See, e.g.*, *Dropbox*, 815 F. App'x at 533 (controlling access based on, *inter ali*a, encryption "level" is still abstract).

20

**B.    The Claim Elements, Individually or Collectively, Add Nothing Inventive Apart from the Abstract Idea**

**1.    The '316 Patent Claims Add Nothing Inventive**

The independent claims state the abstract idea in functional language (i.e., determining "geographical location" or "geographical region," "receiving a current location," and "selecting … digital files … that match[] said current location"). *E.g.*, '316 patent cl. 12.  But an "invention's use of the ineligible concept to which it is directed cannot supply the inventive concept." *BSG*, 899 F.3d at 1290.  The remaining limitations implement the abstract idea using generic components ("memory device," "application processor," "producer device," "receiver device," "distributor device") and functions (storing files, requesting/transmitting information between devices).  Those are the "basic functions of a computer" and "purely functional and generic" components that courts have recognized merely automate the abstract idea in a "particular technological environment"—which is insufficient. *Alice*, 573 U.S. at 225-26; *see, e.g., Bridge & Post*, 778 F. App'x at 888 ("requests" transmitted between "client computer," "server computer," "routing device," and "mobile computing device" are non-inventive).

The dependent claims similarly add nothing inventive.  As discussed, most merely provide characteristics defining a location, such as "latitude and longitude." *Supra* at 14.  But "merely provid[ing] additional criteria for the [system] to consider" is not inventive. *Dropbox*, 815 F. App'x at 533.  Others (22, 28, 29) state that

21

information is sent from one device to another.  But transferring data via "a path in a network" is not inventive.  *Id.*  The rest either restate the abstract idea (which "cannot supply the inventive concept") or recite ancillary limitations (which are likewise non-inventive).  *BSG*, 899 F.3d at 1290; *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1363-64 (Fed. Cir. 2020); *SAP*, 898 F.3d at 1163.

### 2.  The '418, '627, and '989 Patent Claims Add Nothing Inventive

The purported advances of the other patents—controlling access to encrypted data files based on user location—are, again, the abstract idea, *supra* at 3-5, 15-20, which, again, cannot make the claims inventive.  *See BSG*, 899 F.3d at 1290.

Beyond that idea, the independent claims add nothing inventive—just conventional, generic computer implementation.  '418 patent, cls. 1, 12, 23 ("file management system," "information processing device," "processor"); '627 patent, cls. 1, 22 ("distributor device," "communication network," "receiver device"); '989 patent, cls. 1, 9, 14, 21, 27, 31 ("recipient device"); *see Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) ("invocations of computers and networks that are not even arguably inventive are 'insufficient to pass the test of an inventive concept in the application of an abstract idea'").  The written descriptions admit that the claimed hardware are conventional "[e]lectronic devices, systems, networks, and the like."  '627 patent, 7:5-12; '418 patent, 5:49-55; '989 patent, 2:51-56 ("computing facilities … and the like").

While the claims further recite "generating" "encrypting keys," using those keys to "encrypt" or "decrypt" data, and "sending" the encrypted data or keys, the written descriptions admit that these processes were known, and that the claims can use known encryption techniques. *Supra* at 5; *see* '418 patent, 4:17-25 ("*known* encryption algorithms" can be used); '627 patent, 15:42-47 ("*any* other method of encryption can also be used"); '989 patent, 1:33-35. They further admit that the "location" functionality could be implemented with "commercial[ly] availabl[e] … GPS receivers" "as known in the art." '418 patent, 10:14-28; '989 patent, 9:32-37; '627 patent, 9:15-23. Thus, the independent claims supply no inventive concept. *See SAP*, 898 F.3d at 1169 (claims ineligible where "the specification makes clear that off-the-shelf computer technology is usable" to perform the claims).

The same is true of the dependent claims. The majority recite retrieving or storing the recipient's current location ('418 cls. 2-4, 13-14, 24-25; '627 cls. 9, 30; '989 cls. 2-3, 9-10, 13-14, 20-21, 24-25, 29, 31-32); generating or transmitting encryption keys ('627 cls. 2-5, 23-26); or managing, saving, and copying data ('627 cls. 4-8, 10-11, 15-19, 21-22, 26-30, 32-33). Each is a necessary part of the abstract idea—and not inventive. *Supra* at 13-15, 18-20. Other dependent claims recite what functionality the claimed devices and methods provide based on recipient location ('418 cls. 4-7, 15-18, 26-29; '627 cls. 13, 19-21, 32, 38, 41), which again reflects the abstract idea itself. The rest describe conventional components, like "motion

23

detectors," "timers" and "alarms" ('989 cls. 5-7, 28-30), "memory" ('989 cls. 11-13, '627 cls. 17), or conventional characteristics such as being "portable" ('989 cl. 17) or "tamperproof" ('627 cls. 11-12, 42-43).  But "narrow[ing]" claims to particular conventional structures or attributes "does not supply an inventive concept." *BSG*, 899 F.3d at 1291.

Lacking any inventive concept, the claims are ineligible under § 101.

### C.    The Claims Should Be Held Ineligible on the Pleadings

Patent-eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6)" motion.  *SAP*, 989 F.3d at 1166.  This case is no exception—there is no plausible allegation of inventiveness outside the abstract realm.

The claim elements provide no improvement in computer technology—just like the claims found ineligible on motions to dismiss in *Universal Secure*, *Bridge & Post*, and *Dropbox*, and ineligible as a matter of law in *Ericsson* and *Capital One*. *Supra* at 9-19.  No claim construction could change that given the patents' admitted focus on location-based access-control (the abstract idea) and use of known technology.  *See Elec. Commc'n Techs., LLC v. ShoppersChoice.com*, LLC, 958 F.3d 1178, 1184 (Fed. Cir. 2020) (claim construction would not "affect the analysis").

Longbeam does not—and cannot—identify any inventive features apart from the abstract idea.  It alleges that the inventive concept is controlling access to digital

information (and encrypting it) based on location. Compl. ¶¶ 31, 33, 35 38. But that is the abstract idea itself, *supra* at 10-20, which "cannot supply the inventive concept." *Simio*, 983 F.3d at 1363; *see Universal Secure*, 10 F.4th at 1350 (use of "abstract idea" in computer system "cannot serve as an inventive concept"). It also broadly alleges that "the claimed inventions were not well-known, routine, or conventional." Compl. ¶¶ 20-21. But such "sweeping conclusory statements … d[o] not preclude dismissal" under § 101. *Cisco Sys., Inc. v. Uniloc 2017 LLC*, 813 F. App'x 495, 498-99 (Fed. Cir. 2020); *see Simio*, 983 F.3d at 1365; *Dropbox*, 815 F. App'x at 538.[6] Moreover, the inquiry is "not whether the entire claim[s] as a whole" are unconventional, but whether they supply anything inventive "apart from" the abstract idea. *Chamberlain Group, Inc. v. Techtronic Industries Co*., 935 F.3d 1341 (Fed. Cir. 2019). Longbeam's claims do not. *Supra* at 21-24.

Nor does Longbeam's declaration preclude dismissal—it cannot salvage the lack of patent-eligible subject matter in the claims themselves. *Two-Way Media*, 874 F.3d at 1336 (affirming decision not to consider "expert report excerpts" in holding claims ineligible on the pleadings); *Affinity Labs of Tex., LLC v. DirecTV, LLC*, 838 F.3d 1253, 1263 (Fed. Cir. 2016) (affirming 12(b)(6) dismissal and

---

[6] By contrast, in the rare cases where the Federal Circuit found factual issues, the complaints and patents provided detailed allegations explaining how claimed features specifically improved the technology itself. *E.g., Aatrix Software Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1127 (Fed. Cir. 2018).

refusing to consider expert testimony).  Moreover, Longbeam's declaration (1) does not dispute the claims are directed to an abstract idea and (2) merely parrots the same conclusory assertions as Longbeam's Complaint, relying on the abstract idea to supply the purported inventiveness.  *See* D.I. 18 ¶¶ 21-34.  Longbeam's attempts to bolster its deficient patent claims fail.

This is not new ground.  The Federal Circuit and this Court (e.g., in *Universal Secure*) squarely held access-control claims like these ineligible as a matter of law. The same outcome is warranted here.

26

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

OF COUNSEL:

Adam M. Greenfield
Maximilian A. Grant
Gabriel K. Bell
David A. Zucker
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
(202) 637-2200

Kimberly Q. Li
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

February 28, 2022

Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jtigan@morrisnichols.com

*Attorneys for Defendants
Amazon.com, Inc. and Amazon Web
Services, Inc.*

27

## **WORD COUNT CERTIFICATION**

The undersigned counsel hereby certifies that the foregoing document contains 5,000 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font.  The word count includes only the body of the brief, and does not include the cover page, tables of contents and authorities, or counsel blocks.

*/s/ Jeremy A. Tigan*

_____

Jeremy A. Tigan (#5239)

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 28, 2022 upon the following in the manner indicated:

Stamatios Stamoulis, Esquire                    *VIA ELECTRONIC MAIL*
Richard C. Weinblatt, Esquire
800 N. West Street, Third Floor
Wilmington, DC 19801
*Attorneys for Plaintiff*


Ronald M. Daignault, Esquire                    *VIA ELECTRONIC MAIL*
Chandran B. Iyer, Esquire
Zachary H. Ellis, Esquire
DAIGNAULT IYER LLP
8618 Westwood Center Drive
Suite 150
Vienna, VA 22181


*Attorneys for Plaintiff*


                                        */s/ Jeremy A. Tigan*
                                        Jeremy A. Tigan (#5239)