IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

LONGBEAM TECHNOLOGIES LLC, )
)
Plaintiff, )
) C.A. No. 21-1559(CFC)
v. )
)
AMAZON.COM, INC. and )
AMAZON WEB SERVICES, INC.,)
)
Defendants. )

Wednesday, July 13, 2022
2:00 p.m.
Oral Argument

844 King Street
Wilmington, Delaware

BEFORE: THE HONORABLE COLM F. CONNOLLY
United States District Court Judge

APPEARANCES:

STAMOULIS & WEINBLATT LLC
BY: RICHARD C. WEINBLATT, ESQ.

-and-

DAIGNAULT IYER
BY: CHRISTIAN SAMAY, ESQ.

Counsel for the Plaintiff

APPEARANCES CONTINUED:

MORRIS NICHOLS ARSHT & TUNNELL
BY: JEREMY A. TIGAN, ESQ.

-and-

LATHAM & WATKINS
BY: GABRIEL K. BELL, ESQ.
BY: ADAM GREENFIELD, ESQ.
BY: DAVID ZUCKER, ESQ.
Counsel for the Defendants

\- - - - - - - - - -

P R O C E E D I N G S

(Proceedings commenced in the courtroom beginning at 2:00 p.m..)

**MR. WEINBLATT:** Good afternoon, Your Honor. Rich Weinblatt, and with me is Christian Samay. We're here representing the plaintiff Longbeam.

**THE COURT:** Great.

**MR. TIGAN:** Good afternoon, Your Honor. Jeremy Tigan with Morris Nichols on behalf of Amazon. I'm joined by three of my colleagues from Latham & Watkins. We have Gabriel Bell, who will be arguing today, Adam Greenfield and David Zucker.

**THE COURT:** Great. Thanks.

All right. Who's going to argue for the plaintiff?

**MR. SAMAY:** I am, Your Honor.

**THE COURT:** Mr. Samay, can you start with your certification about corporate disclosure?

**MR. SAMAY:** What would you like me to start with?

**THE COURT:** I'm at a loss. It seems to not be in compliance with the rule. The filing says that you identify as having the direct or indirect interested

party. You identify the same entity, Longbeam Technologies, LLC, and Sharon Bullion.

**MR. SAMAY:** Your Honor, I don't have it in front of me and I'm not --

**THE COURT:** I'll give it to you.

**MR. SAMAY:** -- prepared to address it today.

**THE COURT:** Well, I mean, who is Longbeam Technologies? That's the whole point of this order is, you're supposed to disclose, until you get to either an incorporated entity, i.e. a corporation and only a corporation and/or humans. You can't just identify an LLC. And not only have you identified an LLC, you've identified the same LLC that's the plaintiff.

**MR. SAMAY:** With Your Honor's permission, immediately following the hearing, I would be glad to contact my office and update it to the extent it's necessary or call back in to your chambers.

**THE COURT:** Well, you don't call back in. This has to be on the record. Who is Longbeam? Who are the members of Longbeam Technologies, LLC?

**MR. SAMAY:** I do not know.

**THE COURT:** The defendants have no reaction to this statement.

**MR. BELL:** No, Your Honor. We're not sure either.

**THE COURT:** Didn't raise any objections to it?

**MR. BELL:** No. We did not, Your Honor.

**THE COURT:** Don't you want to know who's suing you?

**MR. BELL:** I think that would be helpful, yes, Your Honor.

**THE COURT:** Has there been any discovery in the case yet?

**MR. SAMAY:** No, Your Honor.

**MR. BELL:** No, Your Honor.

**THE COURT:** I'm going to give Longbeam Technologies, LLC, one week to -- and because of the nature of the current supplement, I'm going to require a certification by sworn declaration from a party, that both Rule 7.1 and the litigation funding standing order that I issued in March of this year -- actually, it was April 18 -- that both of those orders have been complied with. And clearly, the first hasn't been.

So there's going to have to be a full disclosure of who Longbeam Technologies, LLC, is, going all the way up the chain. And then because I'm skeptical, then, about that, I want a certification as well about the litigation funding.

**MR. SAMAY:** Understood, Your Honor.

**THE COURT:** Okay. And then that needs to be

done within a week. So that would be July 20th. Okay.

All right. Let's deal with, then, the motion.

**MR. BELL:** Good afternoon, Your Honor. Gabriel Bell with Latham for the Amazon defendants. And I do have some slides, if I may present them.

**THE COURT:** Sure.

**MR. BELL:** Okay. We are here today on defendants' motion to dismiss for lack of patent eligible subject matter under Section 101. There are four patents involved in this case. They're all similar. They all center on controlling access to information based on the location of the recipient.

It's a basic concept that the patent, for example -- and Figure 1 illustrates this way. If you're in one area or country, you can access some information like a movie. If you are in the another country, perhaps overseas, you can't access that information.

So as the Court is well familiar with the *Alice* two-step analysis, if I could jump right in. With one preliminary comment, I think it's notable that Longbeam relegated their Step 1 analysis to a couple of pages towards the back of the brief, which perhaps is a recognition that their Step-1 argument is not strong, and therefore they started with Step 2. But I'll take them in the order that *Alice* did.

Of course at Step 1 of the analysis, we look past the technical jargon and try to get to the focus of the claimed conveyance over the prior art. And here that focus is controlling access to information based on location. I've kind of broken it down and looking at that from three different angles.

First, there's really a human problem going on here more so than a technological one. And that is, unscrupulous individuals. Everybody knows this, try to copy things that are copywritten, such as movies and songs. And this is a particularly difficult problem and important to take care of in the healthcare, financial, national security realms. So this is the kind of familiar human concern that the patents are addressing.

And then when they go to their solution, they address it with a solution that has a very tangible, kind of "real world" understandable commonplace analogue. In position A, you can do it; position B, you can't.

Another context that the Court might find helpful is in the newspaper context. This is the same type of concept involved -- there, you think of a newspaper company limits its distribution. It limits its available access area; for example, to certain blocks within a city or certain cities. And so you'll see three concepts underlying this abstract idea.

First, if you're going to do this, you have to determine the allowable area. Where are you going to allow the information to be accessed?

Second, you need to know the location of the person seeking access. And then what do you do? You just match those up. And if the second is within the first, then you grant the access; otherwise, you don't.

And these three basic steps appear also in the claim language.

So there is one representative claim from each of the four patents. And I don't think it's disputed here that the Court need only address those four to resolve this motion.

The representative claim from the '316 patent is Claim 12. On the left, you'll see it's an apparatus for controlling access. That's that central focus. And you first need to know the allowable area; that's the location identity denoted there. You need to know the location of the requester; that's the current location. And then you match those up. And if the second is within the first, you allow it; otherwise, you don't.

So that reflects the basic abstract idea there that the claim is directed to.

And the fact that the patents are directed to this is evident throughout the written description, we

submit. On the left are segments from the '316 patent starting right from the abstract. What is this about? It's about access to digital data based on specific location of the receiver.

Other passage there. Similar passages are, first and foremost, in the other three patents at issue here.

And the claim language of the representative claims of those other three patents, likewise, features that notion of giving access in certain locations. For example, the '418 patent --

**THE COURT:** Do me a favor. I have to be conscious of time. I've got your point in terms of abstract idea. Let's go on.

**MR. BELL:** Very good. Would the Court prefer to go on to Step 2 or other parts of Step 1?

**THE COURT:** It's up to you, but I do want to go faster, please.

**MR. BELL:** Yes, Your Honor. Yes, of course.

**THE COURT:** I mean, I'm really interested in what the defendant has to say. I'm very skeptical about these patents.

**MR. BELL:** Thank you, Your Honor.

Yes, I will be happy to jump forward to what I think is the -- a key case on this point.

And, Mr. Slater, if we can go to Slide 21.

*Universal Secure*. Not surprisingly, we think this is the most analogous case. It's a case this Court decided at the motion to dismiss stage about access granting patents. The Federal Circuit affirmed that dismissal in a published opinion.

And here, for example, there's encrypted authentication information involving multiple underlying factors. And in that case, it was alleged that the combination of these different authentication methods was sufficient to get it over the 101 hump.

And the Federal Circuit said, no, even though you're using encrypted authentication data and you're collecting all these different things that were themselves conventional and understood, you can't just do it by putting it together in the way of these claims here.

And we submit a similar thing is going on in the claims here, especially as the patentee itself has described them.

Just like there, there are two admittedly conventional things going on. The specification -- excuse me, the written description acknowledges that the encryption is well known. Any well-known encryption technique may be used.

And as far as determining location, you can do

it any way you want. There's no particular location. In fact, the '316 patent says it can be the entire world. You can actually set the location to be the entire world. And you can determine location using GPS, which is well known and conventional. So for that reason, we think this case is on all fours.

Another case we would denote is *Bridge & Post*, which also has encrypting based on geographic location. And to be sure, there may be some differences in the specifics, but at the broad level and at the level that the Court analyzed it, we think it's clear that they are directed to an abstract idea. Even if it was a highly specific method with all of this other stuff, still directed to that abstract idea. The same I think is true here.

And, Mr. Slater, could we go to Slide 26, please.

So then, looking to Step 2, the question here, I think it's the central flaw in my friend's on the other side's argument, is that you don't look at the claims as a whole. And you can't create a fact issue by saying the claims as a whole are conventional over prior art. That's what their opposition largely argues. That's what their declaration largely argues. And that's what they're focusing on.

But the Federal Circuit has rejected that line of analysis. You have to look beyond the abstract idea. And I think that's really where they fail to meet issue and where their argument ultimately falls apart.

So -- and I won't go through each of these, but suffice it to say, we think the specifications make clear that anything added to that abstract idea -- for example here, memory device and processor can be any device; that doesn't matter. The communication could be over any network; that doesn't matter. And, again, you can determine location with commercially available GPS; that doesn't matter.

So turning, then, to Slide 35, please.

They do try to create a fact issue using their expert declaration. And we think it's clear under the case law that no extrinsic evidence can change the fatal flaws in the intrinsic evidence. A couple of cases cited there say the "Court need not," and we submit "should not consider an expert declaration."

But even if you looked more closely at the declaration, there's not a lot of "their" there. And it's notable, I think, that in the declaration for each of the four patents, it follows the same format. There's exactly three paragraphs under each of those four patents.

The first paragraph simply restates the point

of the patent, which they say is "controlling access based on location, sometimes including encryption." The second, they block, quote, the representative claim. And third, they have a conclusory analysis saying that it's unconventional.

So merely restating the abstract idea, wrongly looking to the claim as a whole, and conclusory allegations are entitled to no weight even at the motion to dismission stage.

If we could go to Slide 39, Mr. Slater.

For example, in *Dropbox*, said you can't just say these claims are not well known, routine, or conventional. That's a legal conclusion. The Federal Circuit affirmed 12(b)(6) dismissal.

And notably here, just some examples from the complaint in *Dropbox*, they look very similar. And in some of them, almost word for word, the type of allegations that were being told here overcome the 12(b)(6) stage.

Notably, for example, Paragraph 50 in the bottom right. These claim elements individually or in combination are unconventional. The Federal Circuit said you don't credit that because it's not backed by anything in the patent itself that would allow you to get over the hump. And, notably, in the *Dropbox* complaint, it was multiple pages, multiple paragraphs for that one patent.

And so we think, when the Court analyzes this under the Federal Circuit law, it's clear that it's closer to *Universal Secure* and governed by that line of cases, than closer to other things.

And for that reason, we submit that that motion to dismiss should be granted.

**THE COURT:** All right. Thank you.

**MR. BELL:** Thank you, Your Honor.

**MR. SAMAY:** Your Honor, may I approach?

**THE COURT:** Please.

**MR. SAMAY:** Two copies for you. Maybe one for your clerk.

**THE COURT:** Thank you.

**MR. SAMAY:** May I proceed, Your Honor?

**THE COURT:** Please.

**MR. SAMAY:** Okay. The patents-in-suit, this is generally what I would regard to be a warm-up slide or background, but I think it's worth spending a minute on because I want to highlight to the Court, for starters, that the plaintiffs do not concede, nor do we agree, that the representative claims that are -- the claims that are asserted are represented of all of the claims in dispute.

We've only asserted four claims in this lawsuit. We don't intend to assert more. So it would be improper to address additional claims beyond those that

are asserted, Your Honor.

The issue dates of the patents, you can see they vary quite a bit. There are four patents, the last of which is 2020. And that's notable because 2020 is a good five or six years after *Alice* was decided. So the Patent and Trademark Office, by this time, knows how to apply *Alice* factors when they're deciding whether or not to grant claims.

The priority dates, as Your Honor can also see, date back, you know, some more than 20 years or almost 20 years, back to as early as October of 2000, 2000.

Now, I think that's relevant because we need to put everything in context as to what was happening in 2000. I don't know what was happening last year, much less 2000.

And that makes the point, Your Honor, that it's important for us to know what a skilled artisan at the time might have thought about this invention. It's easy to look back in hindsight and say, yeah, computers have dominated and taken over the world, and now we would understand these things differently than we did back then.

So I think we need to look at it through the lens of someone in 2020.

Here are the standards, Judge, on a 101 motion. I think it's worth making the record on. Patent

eligibility, question of law.

**THE COURT:** Those bullet points are black letter law. Don't worry about making a record. It's in your brief. We're good.

**MR. BELL:** Okay. Your Honor.

**THE COURT:** Let's get right to the point.

**MR. BELL:** Let's move on.

**THE COURT:** I mean, why doesn't *Universal Secure* just dictate the result of this case?

**MR. BELL:** Well, *Universal Secure*, first of all, it proceeds the *CosmoKey* decision by the Federal Circuit. And the *CosmoKey* panel of the Federal Circuit addressed *Universal Secure*, and they distinguished it. And they distinguished it by saying that *Universal Secure* was trying to cobble together four or five preexisting known inventions, call them, at the time, and claim them.

But significantly, the claimed invention in *Universal* was not greater than the sum of any of the parts alone. That's not what's going on in our case.

We've got an invention that, you know, dramatically improved secure networking back in 2000, and it was meant to address a real problem at the time. And that problem, Your Honor, was the Internet and the boom of the Internet.

Now, we cited the spec, and this is part of our

brief as well. But, you know, in 2000, more than 20 years ago, the Internet was just starting to go crazy and that created big problems for security. I actually find it interesting about how the Internet works, and it's relevant to the claims that are at issue here.

For the Internet to work, it works based on, you know, connecting to one, two, three, however many computers are out there, to communicate with the universe. When there are only a few computers that are tied to the Internet, the risk is low that there's going to be a security problem because there are few people using it.

But when you have the explosion in the Internet, which now a part of everyone's life back in 2000, you've now got millions of users, over which information -- over which computers' information travels. And each time it travels to another computer that's unknown at the time that it's sent, because that's how the Internet works, there's a risk. Each time it encounters someone else's computer, there's a new risk.

So these were real world problems that people were starting to grapple with in the year 2000. And one of the ways that it had historically been dealing with protecting information and communications over networks and on computers was cryptography.

Now, they had both private and public key

encryption that made cryptography in the year 2000, at the time of the invention. Each of them had their flaws. The primary flaw with private key systems was that it was too difficult to distribute the keys in a safe way, again, because of the volume of users and the way that the Internet had exploded. So that created additional security risks.

Public key inscription; very slow, computationally intensive. You know, orders of magnitude slower than private key encryption to the tune of about a thousand times.

What popped up? You had central registries and signing authorities to validate public keys. That just introduced a middleman and a cost that was inconvenient to users in order to validate public keys at the time.

And, you know, the most important and inherent risk of it all was just unauthorized users intercepting and gaining access to the encrypted information.

So Napster -- another good example of that, I think we all probably can recall Napster from that time, where file sharing index platforms allowed users of the Internet to invade the computers of anyone along the route and essentially download and copy music, copyrighted music in an illegal fashion.

So the inventions by Longbeam, under Step 1

analysis, they're not abstract. And here's why, Judge.

The specific techniques depart from earlier approaches to secure networks. And, again, they don't -- this is not a process for which computers are invoked merely as a tool. And this is the language of the Federal Circuit here.

"It is the incorporation of the claimed rules." And I added "of geoencryption" -- that's the invention here -- "not the use of the computer that improved the existing technological process." Again, "the incorporation of the claimed rules."

So it's not just the mere use of a computer that is the basis for the invention, it's how the rules that were created by the patent owners and the inventors at the time changed and improved the computing system and network security at the time.

How did they do it? How did Longbeam do it?

Well, they layered -- that's a term from the claims and from the specs -- technological constraints, including location, onto certain existing encryption techniques.

Under Step 2, here's some of the principles. Your Honor, I'm not going to go through them. They're reminders that, you know, on a motion to dismiss at 12(b)(6), pleading specific facts, as we have, that

aspects of the claims are inventive is sufficient. I won't read through them. You could look at *Cellspin* and *Aatrix, BASCOM* and others, Your Honor.

And also, I'd like to make the point that most, if not all, inventions are combinations of mostly old elements. These are the words of the Federal Circuit.

So why are Longbeam's claims not routine, conventional, or well understood at the time? The -- again, this puts us -- we have to look back to 2000 to understand that.

And the specification details each of the four patents, details why the claims structures are unconventional, how they function, how they function differently.

It's also relevant that the claims themselves set forth specific ordered steps that recite the technical solution to security problems in networks and the computing devices.

Now, Your Honor, in our amended complaint, we included a declaration from an expert at the time, a skilled artisan in computer science, Dr. Wills. This is relevant to this part of the analysis because the Court has held that whether or not a claimed element is conventional or routine is a question of fact. We allege it; the specification sets forth how it was not

conventional at the time; even though it did use, in part, certain conventional techniques of cryptography. But it improved of those existing computer ways of protecting information and securing networks.

We supported the complaint with currently unrebutted concrete factual allegations by Dr. Wills. He's a -- has his PhD, his master's, and his BS in computer science. And what he testified about was that the claimed encryption and geo-location techniques were not conventional and routine.

What he says has to be accepted as true on a motion to dismiss, particularly where the defendants haven't come forward with any evidence to refute those factual allegations. Certainly not enough to demonstrate by clear and convincing evidence invalidity on a motion to dismiss.

I would point the Court to *TecSec v Adobe* 978F.3d 1287, a Federal Circuit 2020 decision, where, like here, there was an unrebutted expert declaration asserting the claim technique was specific and unconventional, and that it was an improvement in computer network functionality, as here. Defendants didn't respond in that case and their motion was denied.

So here's a statement about what we think the inventive aspect is, Your Honor. It's shorthand. There's

a lot behind this and would like to unpack it. But the solution was it improved on conventional cryptography and network security by layering in uniquely generated location attributes and constraints.

All of the patents refer to this broadly as geo-encryption. Notably, geo-encryption can consider, and it does in the patent, and it discloses and describes, things other than the location attributes. There are additional constraints. There are additional constraints that are claimed to make the network security systems better.

Here are some representative clips in highlight of some of the features of the claims of the '418 patent, Your Honor.

And it's -- I want to direct the Court's attention to location attribute value and some of the other terms, including area parameter defining the shape of a region and area parameter that generates the encryption keys.

This does not use GPS and encryption and then you know where it gets -- you know where to send something securely. It's not that simple. Of course the patents disclose and they can use existing systems like GPS and conventional encryption, but the whole point of the patents is that it's an improvement on cryptography to

 secure networks in a way that had never, ever been done before.

That's another reason why it's different from *Universal*, because we're not combining two things that hadn't been done before. One of them had never been done before, and the things together had certainly never been done before.

**THE COURT:** So where does it have a technical solution in any of the highlighted language?

**MR. SAMAY:** So, Your Honor, there's no requirement that you have a technical solution in the highlighted language. We need to look behind it. We need to look at what these terms mean, and that's why I'm directing the Court to those specific terms.

**THE COURT:** But what you're directing me to is a declaration by an expert to give meaning to those terms, right?

**MR. SAMAY:** We're directing Your Honor to the specifications of all of the patents, the claims themselves, and yes, an expert.

And the point here, at least with this slide, Your Honor, is that to determine the location, as we heard from plaintiff, and attach that location information -- I'm sorry, from the defendants -- and attach that, the relevant parts of that location information to the

underlying encrypted material, there's a lot to that. There's a lot to how that happens.

And all of it, you know, through the complex things that are described in the patents themselves and the specs, they end up embedded into the computer functionality, the encryption, this improved encryption technique.

And what it does is it -- it provides enhanced security through a location, but never discloses the location. And that's kind of a very important point. It's because, you know, I'm going to -- I want to use this example --

**THE COURT:** Where does it teach somebody how to do that?

**MR. BELL:** I'm sorry?

**THE COURT:** Where does it teach somebody how to do that anywhere in the patent?

**MR. SAMAY:** In all of the specifications, it discloses the logic and the function.

**THE COURT:** All right.

**MR. BELL:** And this is a good example, Your Honor, because it's a good visual, and it's one of the techniques that's claimed, and it's relay geo-encryption.

And so imagine I'm trying to send you, Judge, a

video to watch from New Jersey. It's going to travel over the Internet. Before 2000, before these inventions, very susceptible to being hacked, to that movie being downloaded by someone that has no permission.

So through the geo-encryption technique, the computer file, the digital file, this movie that I'm trying to send you that you've paid for, I don't want others to download it. I don't want others to copy it.

So it gets encrypted with location-based encryption techniques that didn't exist. This was new. This is the part that was new. And it's done without ever disclosing the ultimate location, or any of the locations along the route if it were to be copied by someone else that wasn't permitted.

So you could copy the file entirely along the route without permission, and you would never be able to access the location, and you would never be able to access the content. And that's the protective nature of what was invented.

**THE COURT:** All right. Let me hear from the other side.

**MR. SAMAY:** May I address the newspaper analogy?

**THE COURT:** If you want real quick.

**MR. SAMAY:** Sure. So Amazon talks about, you

know, newspapers and paper routes, but the claims, if we read the claim language carefully, they don't even cover that idea. So that's a problem from the get-go.

The location when people are delivering newspapers is known all along the delivery route by everyone, the carrier, the people that it's shipped to, the people that sort it, the people that receive it. The difference here with this invention and the transmission of digital information is that the location is not known and not knowable anywhere on that route.

The example by Amazon is it's not secure to deliver these newspapers because the destination is known by all. And, again, the invention covers things that where the invention is not known.

And the patent uses this language. The specifications use the term "locationless." Because although it's based on location, it's really locationless because it's concealed and nobody can determine it.

So nothing in the newspaper example stops an intercept or unauthorized copying of a piece of mail or a newspaper or dailies. Whereas here, the transmission, the movie, in my example, cannot be opened unless it ends up at that authorized location and is accessed by an authorized user after decrypting.

Delivering newspapers and targeting ads is a

manual, overt physical act. Certainly human. That's not what's going on here. This is an improvement at the system level. You're dealing with concatenated geo-lock signatures that are layered over and into set boxes, other medium or transmitted, in a way that's seemless and invisible to the users.

**THE COURT:** All right. Thank you.

**MR. SAMAY:** Thank you, Your Honor.

**THE COURT:** All right. Can you reconcile *Universal Secure* and *CosmoKey Solutions*?

**MR. BELL:** I'll take a stab at it, Your Honor.

**THE COURT:** All right. And I appreciate that. You know what, I actually -- that was a great answer. I really appreciate the candor.

**MR. BELL:** Of course, Your Honor.

**THE COURT:** Take a stab, but I'm going to give you like a minute.

**MR. BELL:** Yes, sir.

If we could go to Slide 33, please.

I think the best way we can get our arms around this is to look at how *CosmoKey* distinguished *Universal Secure.* And to be fair, there is, you know, arguably some tension in these cases. But I think we fit squarely within how that was distinguished in the sense that *CosmoKey* said in *Universal Secure*, you're effectively

doing authentication based on a bunch of different factors.

And acknowledged is that that might cause and expect a result in an additive increase in security. So it might well improve the security profile of that system. But nonetheless, because all of those were conventional, and we would submit the same is true here, all of the inputs are conventional in the sense of determining location, GPS, conventional. Admittedly, use any encryption method.

If we can jump to Slide 17, please.

The specification acknowledged you can use any widely known encryption method. And so merely putting those two things together didn't give the inventive spark, didn't give enough to overcome Section 101 in *Universal Secure*; whereas, in *CosmoKey*, there was something more.

There you had a device that used two channels for communication. And it allowed -- I kind of view it as a more user interactivity maybe in the line of the user interface type cases that we see were upheld because it allowed the user to activate the authentication when needed in a certain time window. And that's really what the Federal Circuit identified as the central core advance there.

And the Federal Circuit noted that -- it took

issue with how this Court and the parties in that case determined the abstract idea. And we think it was certainly a reasonable way to do it. But the Federal Circuit decided that it wasn't just authentication in that case. There was enough beyond it in the form of those devices with those multiple channels.

To get over the hump here, we're not saying it's just authentication. We're saying it's, you know, gating access, using encryption based on location.

And couched in those terms, I think it fits, and hopefully arguably is consistent with both *CosmoKey* and *Universal Secure*, which we think is the clearly governing case.

**THE COURT:** All right. Here's what I'm going to do. First of all, I want to commend you for trying. I mean, I can't reconcile the two cases.

**MR. BELL:** It is challenging, Your Honor.

**THE COURT:** They are written by the same person.

**MR. BELL:** Yes, Your Honor.

**THE COURT:** And I think *Universal Secure* is right, and it's a unanimous decision. *CosmoKey* comes after it. I don't think it's right. It's authored by the same principle author, but there's a split panel. I don't think it's right, and I don't think it's reconcilable.

And as a District Court judge, I don't have the time to try to figure out how to reconcile it. And I think you did an admirable job at trying, but I don't think it's possible.

**MR. BELL:** Thank you, Your Honor.

**THE COURT:** And as a practical matter, what it tells me is I could try to write another opinion, like I did in *Universal Secure*, and I might get the right panel, might get affirmed, or, you know, I could write the same opinion that I thought I wrote in both cases, and I get reversed.

Now, one of the judges, who's on the majority opinion, is no longer on the Court, but I'm still -- I think it's rolling the dice. And I've decided I'm going to pick my spots, and it's a purely practical. It is not principled, which I'm embarrassed, in a way, to say.

But, I mean, it's not principled, in terms of trying to decipher the law, but it's actually principled in trying to do justice in the cases and be efficient. Because, why decide in your favor at this stage, only to have this thing come back. You'll have expended your clients' resources, and I'll have expended precious judicial resources down here. It's totally inefficient, but it's the system that our Court has to operate within.

So I'm going to deny your motion, not on

principled grounds. What I am going to do, though, is -- and maybe it's going to start with discovery when it comes to the jurisdictional issues that I think had been raised by the failure of the plaintiff to abide by two standing -- or at least one standing order.

I'm going to really defer to the defendant in scheduling this case, both in terms of figuring out what's a fair trial date and in figuring out a manner by which this case should proceed.

So I'm going to welcome, from particularly the defendant, essentially, you know, innovative ways to fairly adjudicate a case like this when a District Court is faced with this situation.

And by "this situation," I mean the Supreme Court has clearly directed courts to consider these 101 issues at the pleading stage. And yet from a District Court's vantage point when you're faced with the two decisions we've been discussing, it's impossible to fulfill that directive from the Supreme Court in a fair way.

So I'm going to deny the motion for those reasons. And I'm going to then -- I guess you have to have a Rule 16 conference, right?

**MR. BELL:** That's correct, Your Honor.

**THE COURT:** Right. So in putting together your

scheduling proposal, you can keep in mind what I've just put on the record, and I'm going to be openminded about how to appropriately manage this case going forward.

**MR. BELL:** We will endeavor to do that, Your Honor. And if it would be amenable to the Court, we would try to come up with creative ways to, perhaps, tee this issue up in a way that the Court would feel comfortable deciding it sooner rather than later.

Because we do think that in the interest of, you know, judicial economy and the parties' economy, there is value -- and the Supreme Court and the Federal Circuit said there's value in resolving this, even if it's ultimately a bit of a role of the dice, more perhaps saved by resolving it sooner rather than later at that risk than going all the way through the trial and putting the parties through that.

**THE COURT:** So that's true. But I think there, you're getting into some dangerous, uncharted water as well.

I think there are some Federal Circuit judges who would say that this only could be resolved by a jury if there's a factual dispute. I think there are others that would say, and I think the indefiniteness opinions of the Federal Circuit would say that I, as a judge, could make the fact finding necessary to adjudicate 101 motion.

So I hear you, and I'm open. I'm open. I do think we need to do something about these patents.

All right. So, Plaintiff, you've won. I'm denying the motions for the reasons I've articulated.

**MR. SAMAY:** Thank you, Your Honor, I think.

**THE COURT:** You have a week to see if you can comply both with the litigation funding standing order and with the corporate disclosure, LLC order.

You know what I'm talking about?

**MR. SAMAY:** Yes, Your Honor.

**THE COURT:** I'm going to require a sworn declaration by next Wednesday. If you need more time, you know, talk with the other side and I'm willing to hear that.

And I also think, you know, defendants want to, understandably, in a way, focus on the 101 motion. But I think you need to also think about, do we have standing from a plaintiff and who is litigating this? And so that's another issue to consider.

**MR. BELL:** Thank you, Your Honor. We will certainly consider all of that.

**THE COURT:** All right. Anything further?

**MR. SAMAY:** Not from plaintiff, Your Honor.

**MR. BELL:** Nothing from defendant. Thank you, Your Honor.

**THE COURT:** All right. Thank you. Have a good day.

(The proceedings concluded at 2:45 p.m.)

CERTIFICATE OF COURT REPORTER

I, Bonnie R. Archer, RPR, Official Court Stenographer of the Superior Court, State of Delaware, do hereby certify that the foregoing is an accurate transcript of the proceedings had, as reported by me, in the Superior Court of the State of Delaware, in and for New Castle County, in the case herein stated, as the same remains of record in the Office of the Prothonotary at Wilmington, Delaware, and that I am neither counsel nor kin to any party or participant in said action nor interested in the outcome thereof.

This certification shall be considered null and void if this transcript is disassembled in any manner by any party without authorization of the signatory below.

WITNESS my hand this Day day of Month , Year .

/s/ Bonnie R. Archer
Bonnie R. Archer, RPR
Official Court Reporter

MR. BELL: [25] 4/24 5/2 5/5 5/10 6/3 6/7 9/15 9/19 9/23 14/8 16/5 16/7 16/10 24/15 24/21 27/11 27/15 27/18 29/17 29/20 30/5 31/24 32/4 33/20 33/24
MR. SAMAY: [21] 3/18 3/21 4/3 4/6 4/14 4/21 5/9 5/24 14/9 14/11 14/14 14/16 23/10 23/18 24/18 25/22 25/25 27/8 33/5 33/10 33/23
MR. TIGAN: [1] 3/10
MR. WEINBLATT: [1] 3/6
THE COURT: [45]

'

'316 [3] 8/14 9/1 11/2
'418 [2] 9/11 22/13

-

-and [2] 1/22 2/6

/

/s [1] 35/20

1

101 [4] 6/9 15/24 28/15 31/15
101 hump [1] 10/11
101 motion [2] 32/25 33/16
12 [4] 8/15 13/14 13/18 19/25
1287 [1] 21/18
13 [1] 1/11
1559 [1] 1/4
16 [1] 31/23
17 [1] 28/11
18 [1] 5/17

2

20 years [3] 15/10 15/11 17/1
2000 [11] 15/11 15/11 15/14 15/15 16/21 17/1 17/14 17/21 18/1 20/9 25/2
2020 [4] 15/4 15/4 15/23 21/18
2022 [1] 1/11
20th [1] 6/1
21 [1] 10/1
21-1559 [1] 1/4
26 [1] 11/16
2:00 [2] 1/11 3/5
2:45 [1] 34/3

3

33 [1] 27/19
35 [1] 12/13
39 [1] 13/10

5

50 [1] 13/19

7

7.1 [1] 5/15

8

844 [1] 1/14

9

978F.3d [1] 21/18

A

Aatrix [1] 20/3
abide [1] 31/4
able [2] 25/16 25/17
about [18] 3/20 5/22 5/22 9/2 9/3 9/21 10/4 15/18 16/3 17/4 18/10 21/8 21/24 25/25 32/2 33/2 33/9 33/17
abstract [11] 7/25 8/22 9/2 9/14 11/12 11/14 12/2 12/7 13/6 19/1 29/2
accepted [1] 21/11
access [16] 6/11 6/15 6/17 7/4 7/23 8/5 8/7 8/16 9/3 9/10 10/4 13/1 18/18 25/17 25/17 29/9
accessed [2] 8/3 26/23
accurate [1] 35/7
acknowledged [2] 28/3 28/12
acknowledges [1] 10/22
act [1] 27/1
action [1] 35/12
activate [1] 28/21
actually [5] 5/16 11/3 17/3 27/13 30/18
ADAM [2] 2/8 3/14
Adam Greenfield [1] 3/14
added [2] 12/7 19/8
additional [4] 14/25 18/6 22/9 22/9
additive [1] 28/4
address [6] 4/6 7/16 8/12 14/25 16/22 25/22
addressed [1] 16/13
addressing [1] 7/14
adjudicate [2] 31/12 32/25
admirable [1] 30/3
admittedly [2] 10/20 28/9
Adobe [1] 21/17
ads [1] 26/25
advance [1] 28/23
affirmed [3] 10/5 13/14 30/9
after [3] 15/5 26/24 29/23
afternoon [3] 3/6 3/10 6/3
again [6] 12/10 18/4 19/3 19/10 20/9 26/13
ago [1] 17/2
agree [1] 14/20
Alice [4] 6/18 6/25 15/5 15/7
all [34] 3/16 5/21 6/2 6/10 6/10 10/14 11/6 11/13 14/7 14/22 16/11 18/17 18/20 20/5 22/5 23/19 24/3 24/18 24/20 25/20 26/5 26/13 27/7 27/9 27/12 28/6 28/7 29/14 29/15 32/15 33/3 33/21 33/22 34/1
allegations [4] 13/8 13/17 21/6 21/14
allege [1] 20/24
alleged [1] 10/9
allow [3] 8/3 8/21 13/23
allowable [2] 8/2 8/17
allowed [3] 18/21 28/18 28/21
almost [2] 13/17 15/10
alone [1] 16/19
along [4] 18/22 25/13 25/15 26/5
also [7] 8/8 11/8 15/9 20/4 20/15 33/15 33/17
although [1] 26/17
am [3] 3/18 31/1 35/11
AMAZON [5] 1/6 3/11 6/4 25/25 26/11
AMAZON.COM [1] 1/6
amenable [1] 32/5
amended [1] 20/19
analogous [1] 10/3
analogue [1] 7/17
analogy [1] 25/23
analysis [7] 6/19 6/21 7/1 12/2 13/4 19/1 20/22
analyzed [1] 11/11
analyzes [1] 14/1
angles [1] 7/6
another [8] 6/16 7/19 11/7 17/16 18/19 23/3 30/7 33/19
answer [1] 27/13
any [15] 5/1 5/7 10/23 11/1 12/8 12/9 16/18 21/13 23/9 25/12 28/9 28/12 35/12 35/16 35/16
anyone [1] 18/22
anything [3] 12/7 13/22 33/22
anywhere [2] 24/17 26/10
apart [1] 12/4
apparatus [1] 8/15
appear [1] 8/8
APPEARANCES [2] 1/19 2/2
apply [1] 15/7
appreciate [2] 27/12 27/14
approach [1] 14/9
approaches [1] 19/3
appropriately [1] 32/3
April [1] 5/17
April 18 [1] 5/17
Archer [3] 35/4 35/20 35/21
are [45]
area [6] 6/15 7/23 8/2 8/17 22/17 22/18
arguably [2] 27/22 29/11
argue [1] 3/16
argues [2] 11/23 11/24
arguing [1] 3/13
argument [4] 1/12 6/23 11/20 12/4
arms [1] 27/20
around [1] 27/20
ARSHT [1] 2/4
art [2] 7/3 11/22
articulated [1] 33/4
artisan [2] 15/17 20/21
as [29] 3/25 5/22 6/18 7/10 10/18 10/25 10/25 11/20 11/22 13/7 15/9 15/11 15/11 15/13 17/1 19/5 19/25 21/11 21/22 22/5 23/22 28/18 28/23 30/1 30/6 32/18 32/24 35/7 35/9
aspect [1] 21/25
aspects [1] 20/1
assert [1] 14/24
asserted [3] 14/22 14/23 15/1
asserting [1] 21/19
attach [2] 23/23 23/24
attention [1] 22/16
attribute [1] 22/16
attributes [2] 22/4 22/8
authentication [7] 10/8 10/10 10/13 28/1 28/21 29/4 29/8
author [1] 29/24
authored [1] 29/23
authorities [1] 18/13
authorization [1] 35/17
authorized [2] 26/23 26/24
available [2] 7/23 12/11

B

back [11] 4/17 4/18 6/22 15/10 15/11 15/19 15/21 16/21 17/13 20/9 30/21
backed [1] 13/22
background [1] 14/18
BASCOM [1] 20/3
based [10] 6/11 7/4 9/3 11/8 13/1 17/6 25/9 26/17 28/1 29/9
basic [3] 6/13 8/8 8/22
basis [1] 19/13
be [33] 3/13 3/23 4/15 4/19 5/5 5/19 5/25 6/1 8/3 9/12 9/24 10/24 11/2 11/3 11/9 11/9 12/8 12/9 14/6 14/17 14/24 17/10 21/11 25/13 25/16 25/17 26/22 27/22 30/19 32/2 32/5 32/21 35/14
because [20] 5/12 5/21 13/22 14/19 15/4 15/12 17/11 17/17 18/5 20/22 23/4 24/11 24/22 26/12 26/16 26/18 28/6 28/20 30/20 32/9
been [10] 5/7 5/17 5/18 17/22 23/1 23/5 23/5 23/6 31/3 31/18
before [7] 1/16 23/2 23/5 23/6 23/7 25/2 25/2
beginning [1] 3/4
behalf [1] 3/11
behind [2] 22/1 23/12
being [3] 13/18 25/3 25/3
BELL [3] 2/7 3/13 6/4
below [1] 35/17
best [1] 27/20
better [1] 22/11
beyond [3] 12/2 14/25 29/5
big [1] 17/3
bit [2] 15/3 32/13
black [1] 16/2
block [1] 13/3
blocks [1] 7/23
Bonnie [3] 35/4 35/20 35/21
boom [1] 16/23
both [7] 5/14 5/17 17/25 29/11 30/10 31/7 33/7
bottom [1] 13/20
boxes [1] 27/4
Bridge [1] 11/7
brief [3] 6/22 16/4 17/1
broad [1] 11/10
broadly [1] 22/5
broken [1] 7/5
BS [1] 21/7
bullet [1] 16/2
Bullion [1] 4/2
bunch [1] 28/1

C

C.A [1] 1/4
call [3] 4/17 4/18 16/16
can [23] 3/19 6/15 7/18 10/1

C
can... [19] 10/25 11/2 11/3 11/4 12/8 12/10 12/16 15/2 15/9 18/20 22/6 22/23 26/18 27/9 27/20 28/11 28/12 32/1 33/6
can't [7] 4/11 6/17 7/18 10/15 11/21 13/11 29/16
candor [1] 27/14
cannot [1] 26/22
care [1] 7/12
carefully [1] 26/2
carrier [1] 26/6
case [20] 5/8 6/10 9/25 10/3 10/3 10/9 11/6 11/7 12/16 16/9 16/19 21/23 29/1 29/5 29/13 31/7 31/9 31/12 32/3 35/9
cases [7] 12/17 14/3 27/23 28/20 29/16 30/10 30/19
Castle [1] 35/9
cause [1] 28/3
Cellspin [1] 20/2
center [1] 6/11
central [4] 8/16 11/19 18/12 28/23
certain [6] 7/23 7/24 9/10 19/20 21/2 28/22
certainly [5] 21/14 23/6 27/1 29/3 33/21
CERTIFICATE [1] 35/2
certification [4] 3/20 5/14 5/22 35/14
certify [1] 35/6
CFC [1] 1/4
chain [1] 5/21
challenging [1] 29/17
chambers [1] 4/17
change [1] 12/16
changed [1] 19/15
channels [2] 28/17 29/6
CHRISTIAN [2] 1/24 3/7
Circuit [17] 10/5 10/12 12/1 13/14 13/21 14/2 16/12 16/12 19/6 20/6 21/18 28/23 28/25 29/4 32/11 32/20 32/24
cited [2] 12/17 16/25
cities [1] 7/24
city [1] 7/24
claim [12] 8/9 8/10 8/14 8/15 8/23 9/8 13/3 13/7 13/20 16/16 21/20 26/2
Claim 12 [1] 8/15
claimed [8] 7/3 16/17 19/7 19/11 20/23 21/9 22/10 24/23
claims [21] 9/9 10/16 10/18 11/20 11/22 13/12 14/21 14/21 14/22 14/23 14/25 15/8 17/5 19/19 20/1 20/7 20/12 20/15 22/13 23/19 26/1
clear [5] 11/11 12/6 12/15 14/2 21/15
clearly [3] 5/18 29/12 31/15
clerk [1] 14/12
clients' [1] 30/22
clips [1] 22/12
closely [1] 12/20
closer [2] 14/2 14/4
cobble [1] 16/15
colleagues [1] 3/12
collecting [1] 10/14
COLM [1] 1/16
combination [2] 10/10 13/21
combinations [1] 20/5
combining [1] 23/4
come [3] 21/13 30/21 32/6
comes [2] 29/22 31/2
comfortable [1] 32/8
commenced [1] 3/4
commend [1] 29/15
comment [1] 6/20
commercially [1] 12/11
commonplace [1] 7/17
communicate [1] 17/8
communication [2] 12/9 28/18
communications [1] 17/23
company [1] 7/22
complaint [4] 13/16 13/24 20/19 21/5
complex [1] 24/3
compliance [1] 3/24
complied [1] 5/17
comply [1] 33/7
computationally [1] 18/9
computer [10] 17/16 17/19 19/9 19/12 20/21 21/3 21/8 21/21 24/5 25/6
computers [6] 15/19 17/8 17/9 17/24 18/22 19/4
computers' [1] 17/15
computing [2] 19/15 20/18
concatenated [1] 27/3
concealed [1] 26/18
concede [1] 14/20
concept [2] 6/13 7/21
concepts [1] 7/25
concern [1] 7/14
concluded [1] 34/3
conclusion [1] 13/13
conclusory [2] 13/4 13/7
concrete [1] 21/6
conference [1] 31/23
connecting [1] 17/7
CONNOLLY [1] 1/16
conscious [1] 9/13
consider [5] 12/19 22/6 31/15 33/19 33/21
considered [1] 35/15
consistent [1] 29/11
constraints [4] 19/19 22/4 22/9 22/9
contact [1] 4/16
content [1] 25/18
context [3] 7/19 7/20 15/13
CONTINUED [1] 2/2
controlling [4] 6/11 7/4 8/16 13/1
conventional [15] 10/15 10/21 11/5 11/22 13/13 20/8 20/24 21/1 21/2 21/10 22/2 22/24 28/6 28/8 28/9
conveyance [1] 7/3
convincing [1] 21/15
copied [1] 25/13
copies [1] 14/11
copy [4] 7/10 18/23 25/8 25/15
copying [1] 26/20
copyrighted [1] 18/23
copywritten [1] 7/10
core [1] 28/23
corporate [2] 3/20 33/8
corporation [2] 4/10 4/11
correct [1] 31/24
CosmoKey [8] 16/11 16/12 27/10 27/21 27/25 28/16 29/11 29/22
cost [1] 18/14
couched [1] 29/10
could [11] 6/19 11/16 12/9 13/10 20/2 25/15 27/19 30/7 30/9 32/21 32/24
counsel [3] 1/25 2/9 35/11
country [2] 6/15 6/16
County [1] 35/9
couple [2] 6/21 12/17
course [4] 7/1 9/19 22/22 27/15
COURT [29] 1/1 1/16 6/18 7/19 8/12 9/15 10/3 11/11 12/18 14/1 14/19 20/22 21/17 23/14 29/1 30/1 30/13 30/24 31/12 31/15 31/19 32/5 32/7 32/11 35/2 35/5 35/5 35/8 35/21
Court's [2] 22/15 31/17
courtroom [1] 3/4
courts [1] 31/15
cover [1] 26/2
covers [1] 26/13
crazy [1] 17/2
create [2] 11/21 12/14
created [3] 17/3 18/6 19/14
creative [1] 32/6
credit [1] 13/22
cryptography [5] 17/24 18/1 21/2 22/2 22/25
current [2] 5/13 8/19
currently [1] 21/5

D
DAIGNAULT [1] 1/23
dailies [1] 26/21
dangerous [1] 32/18
data [2] 9/3 10/13
date [2] 15/10 31/8
dates [2] 15/2 15/9
DAVID [2] 2/8 3/14
David Zucker [1] 3/14
day [3] 34/2 35/18 35/19
deal [1] 6/2
dealing [2] 17/22 27/3
decide [1] 30/20
decided [4] 10/4 15/5 29/4 30/14
deciding [2] 15/7 32/8
decipher [1] 30/18
decision [3] 16/11 21/18 29/22
decisions [1] 31/18
declaration [10] 5/14 11/24 12/15 12/19 12/21 12/22 20/20 21/19 23/16 33/12
decrypting [1] 26/24
defendant [4] 9/21 31/6 31/11 33/24
defendants [8] 1/7 2/9 4/22 6/4 21/12 21/22 23/24 33/15
defendants' [1] 6/8
defer [1] 31/6
defining [1] 22/17
DELAWARE [5] 1/2 1/14 35/6 35/8 35/11
deliver [1] 26/12
delivering [2] 26/4 26/25
delivery [1] 26/5
demonstrate [1] 21/14
denied [1] 21/23
denote [1] 11/7
denoted [1] 8/18
deny [2] 30/25 31/21
denying [1] 33/4
depart [1] 19/2
described [2] 10/19 24/4
describes [1] 22/7
description [2] 8/25 10/22
destination [1] 26/12
details [2] 20/11 20/12
determine [5] 8/2 11/4 12/11 23/22 26/18
determined [1] 29/2
determining [2] 10/25 28/8
device [3] 12/8 12/8 28/17
devices [2] 20/18 29/6
dice [2] 30/14 32/13
dictate [1] 16/9
did [8] 5/2 6/25 15/21 19/17 19/17 21/1 30/3 30/8
didn't [5] 5/1 21/22 25/10 28/14 28/15
difference [1] 26/8
differences [1] 11/9
different [5] 7/6 10/10 10/14 23/3 28/1
differently [2] 15/21 20/14
difficult [2] 7/11 18/4
digital [3] 9/3 25/6 26/9
direct [2] 3/25 22/15
directed [5] 8/23 8/24 11/12 11/14 31/15
directing [3] 23/14 23/15 23/18
directive [1] 31/19
disassembled [1] 35/16
disclose [2] 4/9 22/23
discloses [3] 22/7 24/9 24/19
disclosing [1] 25/12
disclosure [3] 3/20 5/20 33/8
discovery [2] 5/7 31/2
discussing [1] 31/18
dismiss [6] 6/8 10/4 14/6 19/24 21/12 21/16
dismissal [2] 10/6 13/14
dismission [1] 13/9
dispute [2] 14/22 32/22
disputed [1] 8/11
distinguished [4] 16/13 16/14 27/21 27/24
distribute [1] 18/4
distribution [1] 7/22
DISTRICT [6] 1/1 1/2 1/16 30/1 31/12 31/16
do [27] 4/21 6/5 7/18 8/1 8/5 8/5 9/12 9/17 10/15 10/25 12/14 14/20 14/20 19/17 19/17 24/14 24/17 29/3 29/15 30/19 31/1 32/4 32/9 33/1 33/2 33/17 35/6
does [6] 22/7 22/20 23/8 24/8

D

does... [2] 24/13 24/16
doesn't [4] 12/9 12/10 12/12 16/8
doing [1] 28/1
dominated [1] 15/20
don't [20] 4/3 4/18 5/3 8/7 8/11 8/21 11/20 13/22 14/24 15/14 16/3 19/3 25/7 25/8 26/2 29/23 29/24 29/25 30/1 30/3
done [6] 6/1 23/1 23/5 23/5 23/7 25/11
down [2] 7/5 30/23
download [2] 18/23 25/8
downloaded [1] 25/4
Dr. [2] 20/21 21/6
Dr. Wills [2] 20/21 21/6
dramatically [1] 16/21
Dropbox [3] 13/11 13/16 13/24

E

each [8] 8/10 12/5 12/22 12/24 17/16 17/18 18/2 20/11
earlier [1] 19/2
early [1] 15/11
easy [1] 15/18
economy [2] 32/10 32/10
effectively [1] 27/25
efficient [1] 30/19
either [2] 4/9 4/25
element [1] 20/23
elements [2] 13/20 20/6
eligibility [1] 16/1
eligible [1] 6/8
else [1] 25/13
else's [1] 17/19
embarrassed [1] 30/16
embedded [1] 24/5
encounters [1] 17/18
encrypted [5] 10/7 10/13 18/18 24/1 25/9
encrypting [1] 11/8
encryption [20] 10/23 10/23 13/2 18/1 18/10 19/20 21/9 22/6 22/6 22/19 22/20 22/24 24/6 24/6 24/24 25/5 25/10 28/10 28/13 29/9
end [1] 24/5
endeavor [1] 32/4
ends [1] 26/22
enhanced [1] 24/8
enough [3] 21/14 28/15 29/5
entire [2] 11/2 11/3
entirely [1] 25/15
entitled [1] 13/8
entity [2] 4/1 4/10
especially [1] 10/18
ESQ [6] 1/21 1/24 2/4 2/7 2/8 2/8
essentially [2] 18/23 31/11
even [7] 10/12 11/12 12/20 13/8 21/1 26/2 32/12
ever [2] 23/1 25/11
Everybody [1] 7/9
everyone [1] 26/6
everyone's [1] 17/13
everything [1] 15/13
evidence [4] 12/16 12/17 21/13 21/15
evident [1] 8/25
exactly [1] 12/23
example [13] 6/14 7/23 9/11 10/7 12/7 13/11 13/19 18/19 24/12 24/21 26/11 26/19 26/22
examples [1] 13/15
excuse [1] 10/21
exist [1] 25/10
existing [4] 19/10 19/20 21/3 22/23
expect [1] 28/4
expended [2] 30/21 30/22
expert [6] 12/15 12/19 20/20 21/19 23/16 23/20
exploded [1] 18/6
explosion [1] 17/12
extent [1] 4/16
extrinsic [1] 12/16

F

faced [2] 31/13 31/17
fact [6] 8/24 11/2 11/21 12/14 20/24 32/25
factors [3] 10/9 15/7 28/2
facts [1] 19/25
factual [3] 21/6 21/14 32/22
fail [1] 12/3
failure [1] 31/4
fair [3] 27/22 31/8 31/19
fairly [1] 31/12
falls [1] 12/4
familiar [2] 6/18 7/13
far [1] 10/25
fashion [1] 18/24
faster [1] 9/18
fatal [1] 12/16
favor [2] 9/12 30/20
features [2] 9/9 22/13
Federal [17] 10/5 10/12 12/1 13/13 13/21 14/2 16/11 16/12 19/5 20/6 21/18 28/23 28/25 29/3 32/11 32/20 32/24
feel [1] 32/7
few [2] 17/9 17/11
figure [2] 6/14 30/2
Figure 1 [1] 6/14
figuring [2] 31/7 31/8
file [4] 18/21 25/6 25/6 25/15
filing [1] 3/24
financial [1] 7/12
find [2] 7/19 17/3
finding [1] 32/25
first [10] 5/18 7/7 8/1 8/6 8/17 8/21 9/6 12/25 16/10 29/15
fit [1] 27/23
fits [1] 29/10
five [2] 15/5 16/15
flaw [2] 11/19 18/3
flaws [2] 12/17 18/2
focus [4] 7/2 7/4 8/16 33/16
focusing [1] 11/25
following [1] 4/15
follows [1] 12/23
foregoing [1] 35/6
foremost [1] 9/6
form [1] 29/5
format [1] 12/23
forth [2] 20/16 20/25
forward [3] 9/24 21/13 32/3
four [9] 6/9 8/11 8/12 12/23 12/24 14/23 15/3 16/15 20/11
fours [1] 11/6
friend's [1] 11/19
front [1] 4/4
fulfill [1] 31/19
full [1] 5/19
function [3] 20/13 20/13 24/19
functionality [2] 21/22 24/6
funding [3] 5/15 5/23 33/7
further [1] 33/22

G

GABRIEL [3] 2/7 3/13 6/4
Gabriel Bell [2] 3/13 6/4
gaining [1] 18/18
gating [1] 29/9
generally [1] 14/17
generated [1] 22/3
generates [1] 22/18
geo [6] 21/9 22/6 22/6 24/24 25/5 27/3
geo-encryption [4] 22/6 22/6 24/24 25/5
geo-location [1] 21/9
geo-lock [1] 27/3
geoencryption [1] 19/8
geographic [1] 11/8
get [11] 4/9 7/2 10/11 13/23 16/6 26/3 27/20 29/7 30/8 30/9 30/10
get-go [1] 26/3
gets [2] 22/21 25/9
getting [1] 32/18
give [6] 4/5 5/11 23/16 27/16 28/14 28/15
giving [1] 9/10
glad [1] 4/15
go [12] 7/15 9/14 9/16 9/17 10/1 11/16 12/5 13/10 17/2 19/23 26/3 27/19
going [30] 3/16 5/11 5/13 5/19 5/20 7/7 8/1 8/2 10/17 10/21 16/19 17/10 19/23 24/11 25/1 27/2 27/16 29/14 30/14 30/25 31/1 31/2 31/6 31/10 31/21 31/22 32/2 32/3 32/15 33/11
good [10] 3/6 3/10 6/3 9/15 15/5 16/4 18/19 24/21 24/22 34/1
got [3] 9/13 16/20 17/14
governed [1] 14/3
governing [1] 29/13
GPS [5] 11/4 12/11 22/20 22/23 28/9
grant [2] 8/7 15/8
granted [1] 14/6
granting [1] 10/5
grapple [1] 17/21
great [3] 3/9 3/15 27/13
greater [1] 16/18
GREENFIELD [2] 2/8 3/14
grounds [1] 31/1
guess [1] 31/22

H

hacked [1] 25/3
had [11] 17/22 17/25 18/2 18/6 18/12 23/1 23/5 23/6 28/17 31/3 35/7
hadn't [1] 23/5
hand [1] 35/18
happening [2] 15/13 15/14
happens [1] 24/2
happy [1] 9/24
has [13] 4/19 5/7 7/16 9/21 10/18 11/8 12/1 20/23 21/7 21/11 25/4 30/24 31/15
hasn't [1] 5/18
have [27] 3/13 4/3 4/12 4/22 5/17 5/19 6/5 8/1 9/12 12/2 13/4 15/18 15/19 17/12 19/25 20/9 23/8 23/11 30/1 30/21 30/21 30/22 31/22 31/23 33/6 33/17 34/1
haven't [1] 21/13
having [1] 3/25
he [2] 21/8 21/11
He's [1] 21/7
healthcare [1] 7/12
hear [3] 25/20 33/1 33/13
heard [1] 23/22
hearing [1] 4/15
held [1] 20/23
helpful [2] 5/5 7/20
here [28] 3/8 6/7 7/3 7/8 8/11 9/7 10/7 10/16 10/18 11/15 11/18 12/8 13/15 13/18 15/24 17/5 19/6 19/9 21/19 21/22 22/12 23/21 26/8 26/21 27/2 28/7 29/7 30/23
here overcome [1] 13/18
here's [4] 19/1 19/22 21/24 29/14
hereby [1] 35/6
herein [1] 35/9
highlight [2] 14/19 22/12
highlighted [2] 23/9 23/12
highly [1] 11/12
hindsight [1] 15/19
his [3] 21/7 21/7 21/7
historically [1] 17/22
Honor [43]
Honor's [1] 4/14
HONORABLE [1] 1/16
hopefully [1] 29/11
how [17] 15/6 17/4 17/17 19/13 19/17 19/17 20/13 20/13 20/25 24/2 24/13 24/16 27/21 27/24 29/1 30/2 32/3
however [1] 17/7
human [3] 7/7 7/14 27/1
humans [1] 4/11
hump [3] 10/11 13/24 29/7

I

I'd [1] 20/4
I'll [4] 4/5 6/24 27/11 30/22
I'm [32] 3/11 3/23 4/4 5/11 5/13 5/21 9/20 9/21 19/23 23/13 23/24 24/11 24/15 24/25 25/6 27/16 29/14 30/13 30/14 30/16 30/25 31/6 31/10 31/21 31/22 32/2 33/1 33/1 33/3 33/9 33/11 33/13
I've [5] 7/5 9/13 30/14 32/1 33/4
i.e [1] 4/10

I

idea [10] 7/25 8/22 9/14 11/12 11/14 12/2 12/7 13/6 26/3 29/2
identified [3] 4/12 4/13 28/23
identify [3] 3/25 4/1 4/11
identity [1] 8/18
illegal [1] 18/24
illustrates [1] 6/14
imagine [1] 24/25
immediately [1] 4/15
important [4] 7/12 15/17 18/16 24/10
impossible [1] 31/18
improper [1] 14/25
improve [1] 28/5
improved [6] 16/21 19/9 19/15 21/3 22/2 24/6
improvement [3] 21/21 22/25 27/2
INC [2] 1/6 1/6
included [1] 20/20
including [3] 13/2 19/20 22/17
inconvenient [1] 18/14
incorporated [1] 4/10
incorporation [2] 19/7 19/11
increase [1] 28/4
indefiniteness [1] 32/23
index [1] 18/21
indirect [1] 3/25
individually [1] 13/20
individuals [1] 7/9
inefficient [1] 30/23
information [14] 6/11 6/15 6/17 7/4 8/3 10/8 17/15 17/15 17/23 18/18 21/4 23/23 23/25 26/9
inherent [1] 18/16
innovative [1] 31/11
inputs [1] 28/8
inscription [1] 18/8
intend [1] 14/24
intensive [1] 18/9
interactivity [1] 28/19
intercept [1] 26/20
intercepting [1] 18/17
interest [1] 32/9
interested [3] 3/25 9/20 35/13
interesting [1] 17/4
interface [1] 28/20
Internet [11] 16/23 16/24 17/2 17/4 17/6 17/10 17/13 17/18 18/6 18/22 25/2
intrinsic [1] 12/17
introduced [1] 18/14
invade [1] 18/22
invalidity [1] 21/15
invented [1] 25/19
invention [9] 15/18 16/17 16/20 18/2 19/8 19/13 26/8 26/13 26/14
inventions [4] 16/16 18/25 20/5 25/2
inventive [3] 20/1 21/25 28/14
inventors [1] 19/14
invisible [1] 27/6
invoked [1] 19/4
involved [2] 6/10 7/21
involving [1] 10/8
is [77]
issue [9] 9/6 11/21 12/3 12/14 15/2 17/5 29/1 32/7 33/19
issued [1] 5/16
issues [2] 31/3 31/16
it [87]
it's [59]
its [2] 7/22 7/22
itself [2] 10/18 13/23
IYER [1] 1/23

J

jargon [1] 7/2
JEREMY [2] 2/4 3/11
Jeremy Tigan [1] 3/11
Jersey [1] 25/1
job [1] 30/3
joined [1] 3/12
judge [6] 1/16 15/24 19/1 24/25 30/1 32/24
judges [2] 30/12 32/20
judicial [2] 30/23 32/10
July [2] 1/11 6/1
July 20th [1] 6/1
jump [3] 6/19 9/24 28/11
jurisdictional [1] 31/3
jury [1] 32/21
just [14] 4/11 8/5 10/15 10/20 13/11 13/15 16/9 17/2 18/13 18/17 19/12 29/4 29/8 32/1
justice [1] 30/19

K

keep [1] 32/1
key [5] 9/25 17/25 18/3 18/8 18/10
keys [4] 18/4 18/13 18/15 22/19
kin [1] 35/12
kind [5] 7/5 7/13 7/16 24/10 28/18
King [1] 1/14
know [28] 4/21 5/3 8/4 8/17 8/18 15/10 15/14 15/17 16/20 17/1 17/7 18/9 18/16 19/24 22/21 22/21 24/3 24/11 26/1 27/13 27/22 29/8 30/9 31/11 32/10 33/9 33/13 33/15
knowable [1] 26/10
known [10] 10/23 10/23 11/5 13/12 16/16 26/5 26/9 26/12 26/14 28/13
knows [2] 7/9 15/6

L

lack [1] 6/8
language [7] 8/9 9/8 19/5 23/9 23/12 26/2 26/15
largely [2] 11/23 11/24
last [2] 15/3 15/14
later [2] 32/8 32/14
LATHAM [3] 2/7 3/12 6/4
law [5] 12/16 14/2 16/1 16/3 30/18
lawsuit [1] 14/24
layered [2] 19/18 27/4
layering [1] 22/3
least [2] 23/21 31/5
left [2] 8/15 9/1
legal [1] 13/13
lens [1] 15/23
less [1] 15/15
Let [1] 25/20
Let's [4] 6/2 9/14 16/6 16/7
letter [1] 16/3
level [3] 11/10 11/10 27/3
life [1] 17/13
like [10] 3/21 6/16 10/20 20/4 21/18 22/1 22/23 27/17 30/7 31/12
likewise [1] 9/9
limits [2] 7/22 7/22
line [3] 12/1 14/3 28/19
litigating [1] 33/18
litigation [3] 5/15 5/23 33/7
LLC [10] 1/3 1/20 4/2 4/12 4/12 4/13 4/20 5/12 5/20 33/8
location [33] 6/12 7/5 8/4 8/18 8/19 8/19 9/4 10/25 11/1 11/3 11/4 11/8 12/11 13/2 19/20 21/9 22/4 22/8 22/16 23/22 23/23 23/25 24/9 24/10 25/9 25/12 25/17 26/4 26/9 26/17 26/23 28/9 29/9
location-based [1] 25/9
locationless [2] 26/16 26/17
locations [2] 9/10 25/12
lock [1] 27/3
logic [1] 24/19
LONGBEAM [11] 1/3 3/8 4/1 4/7 4/19 4/20 5/11 5/20 6/20 18/25 19/17
Longbeam's [1] 20/7
longer [1] 30/13
look [11] 7/1 11/20 12/2 13/16 15/19 15/22 20/2 20/9 23/12 23/13 27/21
looked [1] 12/20
looking [3] 7/5 11/18 13/7
loss [1] 3/23
lot [4] 12/21 22/1 24/1 24/2
low [1] 17/10

M

made [1] 18/1
magnitude [1] 18/9
mail [1] 26/20
majority [1] 30/12
make [4] 12/6 20/4 22/10 32/25
makes [1] 15/16
making [2] 15/25 16/3
manage [1] 32/3
manner [2] 31/8 35/16
manual [1] 27/1
many [1] 17/7
March [1] 5/16
master's [1] 21/7
match [2] 8/6 8/20
material [1] 24/1
matter [5] 6/9 12/9 12/10 12/12 30/6
may [6] 6/5 10/24 11/9 14/9 14/14 25/22
maybe [3] 14/11 28/19 31/2
me [9] 3/7 3/21 4/4 9/12 10/22 23/15 25/20 30/7 35/8
mean [7] 4/7 9/20 16/8 23/13 29/16 30/17 31/14
meaning [1] 23/16
meant [1] 16/22
medium [1] 27/5
meet [1] 12/3
members [1] 4/20
memory [1] 12/8
mere [1] 19/12
merely [3] 13/6 19/5 28/13
method [3] 11/13 28/10 28/13
methods [1] 10/10
middleman [1] 18/14
might [6] 7/19 15/18 28/3 28/5 30/8 30/9
millions [1] 17/14
mind [1] 32/1
minute [2] 14/18 27/17
Month [1] 35/19
more [9] 7/8 12/20 14/24 15/10 17/1 28/16 28/19 32/13 33/12
MORRIS [2] 2/4 3/11
most [3] 10/3 18/16 20/4
mostly [1] 20/5
motion [15] 6/2 6/8 8/13 10/4 13/8 14/5 15/24 19/24 21/12 21/15 21/23 30/25 31/21 32/25 33/16
motions [1] 33/4
move [1] 16/7
movie [4] 6/16 25/3 25/6 26/22
movies [1] 7/10
Mr [1] 13/10
Mr. [3] 3/19 10/1 11/16
Mr. Samay [1] 3/19
Mr. Slater [2] 10/1 11/16
much [1] 15/14
multiple [4] 10/8 13/25 13/25 29/6
music [2] 18/23 18/23
my [6] 3/12 4/16 11/19 26/22 30/15 35/18

N

Napster [2] 18/19 18/20
national [1] 7/13
nature [2] 5/13 25/18
necessary [2] 4/17 32/25
need [12] 8/4 8/12 8/17 8/18 12/18 15/12 15/22 23/12 23/12 33/2 33/12 33/17
needed [1] 28/22
needs [1] 5/25
neither [1] 35/11
network [5] 12/10 19/16 21/21 22/3 22/10
networking [1] 16/21
networks [5] 17/23 19/3 20/17 21/4 23/1
never [6] 23/1 23/5 23/6 24/9 25/16 25/17
new [5] 17/19 25/1 25/10 25/11 35/9
New Jersey [1] 25/1
newspaper [5] 7/20 7/22 25/22 26/19 26/21
newspapers [4] 26/1 26/5 26/12 26/25
next [1] 33/12
NICHOLS [2] 2/4 3/11
no [13] 1/4 4/22 4/24 5/2 5/9

N

no... [8] 5/10 10/12 11/1 12/16 13/8 23/10 25/4 30/13
nobody [1] 26/18
nonetheless [1] 28/6
not [41]
notable [3] 6/20 12/22 15/4
notably [4] 13/15 13/19 13/24 22/6
noted [1] 28/25
nothing [2] 26/19 33/24
notion [1] 9/10
now [8] 15/12 15/20 16/25 17/13 17/14 17/25 20/19 30/12
null [1] 35/15

O

objections [1] 5/1
October [1] 15/11
office [3] 4/16 15/6 35/10
Official [2] 35/5 35/21
Okay [5] 5/25 6/1 6/7 14/16 16/5
old [1] 20/5
one [13] 5/12 6/15 6/19 7/8 8/10 13/25 14/11 17/7 17/21 23/5 24/22 30/12 31/5
only [7] 4/10 4/12 8/12 14/23 17/9 30/20 32/21
open [2] 33/1 33/1
opened [1] 26/22
openminded [1] 32/2
operate [1] 30/24
opinion [4] 10/6 30/7 30/10 30/13
opinions [1] 32/23
opposition [1] 11/23
Oral [1] 1/12
order [7] 4/8 5/15 6/25 18/15 31/5 33/7 33/8
ordered [1] 20/16
orders [2] 5/17 18/9
other [12] 9/5 9/6 9/9 9/16 11/13 11/19 14/4 22/8 22/17 25/21 27/4 33/13
others [4] 20/3 25/8 25/8 32/22
otherwise [2] 8/7 8/21
our [5] 16/19 16/25 20/19 27/20 30/24
out [4] 17/8 30/2 31/7 31/8
outcome [1] 35/13
over [12] 7/3 10/11 11/22 12/9 13/23 15/20 17/14 17/15 17/23 25/1 27/4 29/7
overcome [2] 13/18 28/15
overseas [1] 6/17
overt [1] 27/1
owners [1] 19/14

P

p.m [3] 1/11 3/5 34/3
pages [2] 6/21 13/25
paid [1] 25/7
panel [3] 16/12 29/24 30/8
paper [1] 26/1
paragraph [2] 12/25 13/19
Paragraph 50 [1] 13/19
paragraphs [2] 12/24 13/25
parameter [2] 22/17 22/18
part [5] 16/25 17/13 20/22 21/1 25/11
participant [1] 35/12
particular [1] 11/1
particularly [3] 7/11 21/12 31/10
parties [2] 29/1 32/16
parties' [1] 32/10
parts [3] 9/16 16/18 23/25
party [4] 4/1 5/14 35/12 35/16
passage [1] 9/5
passages [1] 9/5
past [1] 7/2
patent [16] 6/8 6/13 8/14 9/1 9/11 11/2 13/1 13/23 13/25 15/6 15/25 19/14 22/7 22/13 24/17 26/15
patentee [1] 10/18
patents [20] 6/9 7/14 8/11 8/24 9/6 9/9 9/22 10/5 12/23 12/24 14/16 15/2 15/3 20/12 22/5 22/22 22/25 23/19 24/4 33/2
people [6] 17/11 17/20 26/4 26/6 26/7 26/7
perhaps [4] 6/16 6/22 32/6 32/13
permission [3] 4/14 25/4 25/16
permitted [1] 25/14
person [2] 8/5 29/19
PhD [1] 21/7
physical [1] 27/1
pick [1] 30/15
piece [1] 26/20
plaintiff [10] 1/4 1/25 3/8 3/17 4/13 23/23 31/4 33/3 33/18 33/23
plaintiffs [1] 14/20
platforms [1] 18/21
pleading [2] 19/25 31/16
please [7] 9/18 11/17 12/13 14/10 14/15 27/19 28/11
point [12] 4/8 9/13 9/25 12/25 15/16 16/6 20/4 21/17 22/24 23/21 24/10 31/17
points [1] 16/2
popped [1] 18/12
position [2] 7/18 7/18
possible [1] 30/4
Post [1] 11/7
practical [2] 30/6 30/15
precious [1] 30/22
preexisting [1] 16/15
prefer [1] 9/15
preliminary [1] 6/20
prepared [1] 4/6
present [1] 6/5
primary [1] 18/3
principle [1] 29/24
principled [4] 30/16 30/17 30/18 31/1
principles [1] 19/22
prior [2] 7/3 11/22
priority [1] 15/9
private [3] 17/25 18/3 18/10
probably [1] 18/20
problem [6] 7/7 7/11 16/22 16/23 17/11 26/3
problems [3] 17/3 19/20 20/17
proceed [2] 14/14 31/9
proceedings [3] 3/4 34/3 35/7
proceeds [1] 16/11
process [2] 19/4 19/10
processor [1] 12/8
profile [1] 28/5
proposal [1] 32/1
protecting [2] 17/23 21/3
protective [1] 25/18
Prothonotary [1] 35/10
provides [1] 24/8
public [4] 17/25 18/8 18/13 18/15
published [1] 10/6
purely [1] 30/15
put [2] 15/13 32/2
puts [1] 20/9
putting [4] 10/16 28/13 31/25 32/15

Q

question [3] 11/18 16/1 20/24
quick [1] 25/24
quite [1] 15/3
quote [1] 13/3

R

raise [1] 5/1
raised [1] 31/3
rather [2] 32/8 32/14
reaction [1] 4/22
read [2] 20/2 26/2
real [4] 7/17 16/22 17/20 25/24
really [7] 7/7 9/20 12/3 26/17 27/14 28/22 31/6
realms [1] 7/13
reason [3] 11/5 14/5 23/3
reasonable [1] 29/3
reasons [2] 31/22 33/4
recall [1] 18/20
receive [1] 26/7
receiver [1] 9/4
recipient [1] 6/12
recite [1] 20/16
recognition [1] 6/23
reconcilable [1] 29/25
reconcile [3] 27/9 29/16 30/2
record [5] 4/19 15/25 16/3 32/2 35/10
refer [1] 22/5
reflects [1] 8/22
refute [1] 21/13
regard [1] 14/17
region [1] 22/18
registries [1] 18/12
rejected [1] 12/1
relay [1] 24/23
relegated [1] 6/21
relevant [5] 15/12 17/5 20/15 20/22 23/25
remains [1] 35/10
reminders [1] 19/24
reported [1] 35/7
REPORTER [2] 35/2 35/21
representative [6] 8/10 8/14 9/8 13/3 14/21 22/12
represented [1] 14/22
representing [1] 3/8
requester [1] 8/19
require [2] 5/13 33/11
requirement [1] 23/11
resolve [1] 8/12
resolved [1] 32/21
resolving [2] 32/12 32/14
resources [2] 30/22 30/23
respond [1] 21/22
restates [1] 12/25
restating [1] 13/6
result [2] 16/9 28/4
reversed [1] 30/11
Rich [1] 3/7
RICHARD [1] 1/21
right [23] 3/16 6/2 6/19 9/2 13/20 14/7 16/6 23/17 24/20 25/20 27/7 27/9 27/12 29/14 29/22 29/23 29/25 30/8 31/23 31/25 33/3 33/22 34/1
risk [5] 17/10 17/18 17/19 18/17 32/14
risks [1] 18/7
role [1] 32/13
rolling [1] 30/14
route [5] 18/22 25/13 25/16 26/5 26/10
routes [1] 26/1
routine [4] 13/12 20/7 20/24 21/10
RPR [2] 35/4 35/21
rule [3] 3/24 5/15 31/23
Rule 16 [1] 31/23
Rule 7.1 [1] 5/15
rules [3] 19/7 19/11 19/13

S

safe [1] 18/4
said [6] 10/12 13/11 13/21 27/25 32/12 35/12
SAMAY [3] 1/24 3/7 3/19
same [10] 4/1 4/13 7/20 11/14 12/23 28/7 29/18 29/24 30/9 35/10
saved [1] 32/13
say [10] 9/21 12/6 12/18 13/1 13/12 15/19 30/16 32/21 32/23 32/24
saying [5] 11/21 13/4 16/14 29/7 29/8
says [3] 3/24 11/2 21/11
scheduling [2] 31/7 32/1
science [2] 20/21 21/8
second [4] 8/4 8/6 8/20 13/2
Section [2] 6/9 28/15
Section 101 [2] 6/9 28/15
secure [17] 10/2 14/3 16/9 16/10 16/13 16/14 16/21 19/3 23/1 26/11 27/10 27/22 27/25 28/16 29/12 29/21 30/8
securely [1] 22/22
securing [1] 21/4
security [11] 7/13 17/3 17/11 18/7 19/16 20/17 22/3 22/10 24/9 28/4 28/5
see [6] 7/24 8/15 15/2 15/9 28/20 33/6
seeking [1] 8/5
seemless [1] 27/5
seems [1] 3/23

S

segments [1] 9/1
send [3] 22/21 24/25 25/7
sense [2] 27/24 28/8
sent [1] 17/17
SERVICES [1] 1/6
set [3] 11/3 20/16 27/4
sets [1] 20/25
shall [1] 35/14
shape [1] 22/17
sharing [1] 18/21
Sharon [1] 4/2
shipped [1] 26/6
shorthand [1] 21/25
should [3] 12/18 14/6 31/9
side [2] 25/21 33/13
side's [1] 11/20
signatory [1] 35/17
signatures [1] 27/4
significantly [1] 16/17
signing [1] 18/13
similar [4] 6/10 9/5 10/17 13/16
simple [1] 22/22
simply [1] 12/25
sir [1] 27/18
situation [2] 31/13 31/14
six [1] 15/5
six years [1] 15/5
skeptical [2] 5/21 9/21
skilled [2] 15/17 20/21
Slater [3] 10/1 11/16 13/10
slide [8] 10/1 11/16 12/13 13/10 14/17 23/21 27/19 28/11
Slide 17 [1] 28/11
Slide 21 [1] 10/1
Slide 26 [1] 11/16
Slide 33 [1] 27/19
Slide 35 [1] 12/13
Slide 39 [1] 13/10
slides [1] 6/5
slow [1] 18/8
slower [1] 18/10
so [43]
solution [6] 7/15 7/16 20/17 22/2 23/9 23/11
Solutions [1] 27/10
some [13] 6/5 6/15 11/9 13/15 13/16 15/10 19/22 22/12 22/13 22/16 27/22 32/18 32/20
somebody [2] 24/13 24/16
someone [4] 15/23 17/19 25/4 25/13
something [3] 22/21 28/16 33/2
sometimes [1] 13/2
songs [1] 7/11
sooner [2] 32/8 32/14
sorry [2] 23/24 24/15
sort [1] 26/7
spark [1] 28/14
spec [1] 16/25
specific [7] 9/3 11/13 19/2 19/25 20/16 21/20 23/14
specification [4] 10/21 20/11 20/25 28/12
specifications [4] 12/6 23/19 24/18 26/16
specifics [1] 11/10
specs [2] 19/19 24/5
spending [1] 14/18
split [1] 29/24
spots [1] 30/15
squarely [1] 27/23
stab [2] 27/11 27/16
stage [5] 10/4 13/9 13/18 30/20 31/16
STAMOULIS [1] 1/20
standards [1] 15/24
standing [5] 5/15 31/5 31/5 33/7 33/17
start [3] 3/19 3/21 31/2
started [1] 6/24
starters [1] 14/19
starting [3] 9/2 17/2 17/21
State [2] 35/5 35/8
stated [1] 35/9
statement [2] 4/23 21/24
STATES [2] 1/1 1/16
Stenographer [1] 35/5
step [10] 6/19 6/21 6/23 6/24 7/1 9/16 9/16 11/18 18/25 19/22
Step 1 [4] 6/21 7/1 9/16 18/25
Step 2 [4] 6/24 9/16 11/18 19/22
Step-1 [1] 6/23
steps [2] 8/8 20/16
still [2] 11/13 30/13
stops [1] 26/19
Street [1] 1/14
strong [1] 6/23
structures [1] 20/12
stuff [1] 11/13
subject [1] 6/9
submit [5] 9/1 10/17 12/18 14/5 28/7
such [1] 7/10
suffice [1] 12/6
sufficient [2] 10/11 20/1
suing [1] 5/3
suit [1] 14/16
sum [1] 16/18
Superior [2] 35/5 35/8
supplement [1] 5/13
supported [1] 21/5
supposed [1] 4/9
Supreme [3] 31/14 31/19 32/11
sure [4] 4/24 6/6 11/9 25/25
surprisingly [1] 10/2
susceptible [1] 25/3
sworn [2] 5/14 33/11
system [4] 19/15 27/3 28/5 30/24
systems [3] 18/3 22/10 22/23

T

take [4] 6/24 7/12 27/11 27/16
taken [1] 15/20
talk [1] 33/13
talking [1] 33/9
talks [1] 25/25
tangible [1] 7/16
targeting [1] 26/25
teach [2] 24/13 24/16
technical [4] 7/2 20/16 23/8 23/11
technique [4] 10/24 21/20 24/7 25/5
techniques [6] 19/2 19/21 21/2 21/9 24/23 25/10
technological [3] 7/8 19/10 19/19
TECHNOLOGIES [6] 1/3 4/2 4/8 4/20 5/12 5/20
TecSec [1] 21/17
tee [1] 32/6
tells [1] 30/7
tension [1] 27/23
term [2] 19/18 26/16
terms [8] 9/13 22/17 23/13 23/14 23/16 29/10 30/17 31/7
testified [1] 21/8
than [11] 7/8 14/4 15/10 15/21 16/18 17/1 18/10 22/8 32/8 32/14 32/14
Thank [11] 9/23 14/7 14/8 14/13 27/7 27/8 30/5 33/5 33/20 33/24 34/1
Thanks [1] 3/15
that [153]
that's [29] 4/8 4/13 8/16 8/17 8/19 11/22 11/23 11/24 12/3 13/13 15/4 15/12 16/19 17/16 17/17 19/8 19/18 23/3 23/13 24/10 24/23 25/18 26/3 27/1 27/5 28/22 31/24 32/17 33/19
their [10] 6/21 6/23 7/15 11/23 11/23 12/4 12/14 12/21 18/2 21/23
them [10] 6/5 6/24 10/19 13/17 16/16 16/16 18/2 19/23 20/2 23/5
themselves [4] 10/14 20/15 23/20 24/4
then [13] 5/21 5/22 5/25 6/2 7/15 8/5 8/7 8/20 11/18 12/13 15/21 22/20 31/22
there [28] 5/7 6/9 7/21 8/10 8/18 8/22 9/5 10/20 10/20 11/9 12/18 12/21 15/3 17/8 17/9 17/11 21/19 22/8 22/9 27/22 28/16 28/17 28/24 29/5 32/10 32/17 32/20 32/22
there's [16] 5/19 7/7 10/7 11/1 12/21 12/23 17/10 17/18 17/19 21/25 23/10 24/1 24/2 29/24 32/12 32/22
therefore [1] 6/24
thereof [1] 35/13
these [17] 8/8 9/22 10/10 10/14 10/16 12/5 13/12 13/20 15/21 17/20 20/6 23/13 25/2 26/12 27/23 31/15 33/2
they [24] 6/10 6/24 7/15 7/15 11/11 12/3 12/14 13/1 13/3 13/4 13/16 15/3 16/13 16/14 17/25 19/3 19/17 19/18 20/13 20/13 22/23 24/5 26/2 29/18
they're [5] 6/10 11/24 15/7 19/1 19/23
thing [2] 10/17 30/21
things [11] 7/10 10/14 10/21 14/4 15/21 22/8 23/4 23/6 24/4 26/13 28/14
think [44]
third [1] 13/3
this [62]
those [18] 5/17 8/6 8/12 8/20 9/9 12/24 14/25 16/2 21/3 21/13 23/14 23/16 28/6 28/14 29/5 29/6 29/10 31/21
though [3] 10/12 21/1 31/1
thought [2] 15/18 30/10
thousand [1] 18/11
three [8] 3/12 7/6 7/24 8/8 9/6 9/9 12/24 17/7
through [9] 12/5 15/22 19/23 20/2 24/3 24/9 25/5 32/15 32/16
throughout [1] 8/25
tied [1] 17/9
TIGAN [2] 2/4 3/11
time [19] 9/13 15/6 15/18 16/16 16/22 17/16 17/17 17/18 18/2 18/15 18/20 19/15 19/16 20/8 20/20 21/1 28/22 30/2 33/12
times [1] 18/11
today [3] 3/13 4/6 6/7
together [5] 10/16 16/15 23/6 28/14 31/25
told [1] 13/18
too [1] 18/3
took [1] 28/25
tool [1] 19/5
totally [1] 30/23
towards [1] 6/22
Trademark [1] 15/6
transcript [2] 35/7 35/15
transmission [2] 26/8 26/21
transmitted [1] 27/5
travel [1] 25/1
travels [2] 17/15 17/16
trial [2] 31/8 32/15
true [4] 11/14 21/11 28/7 32/17
try [6] 7/2 7/9 12/14 30/2 30/7 32/6
trying [7] 16/15 24/25 25/7 29/15 30/3 30/18 30/19
tune [1] 18/10
TUNNELL [1] 2/4
turning [1] 12/13
two [10] 6/19 10/20 14/11 17/7 23/4 28/14 28/17 29/16 31/4 31/17
two-step [1] 6/19
type [3] 7/21 13/17 28/20

U

ultimate [1] 25/12
ultimately [2] 12/4 32/13
unanimous [1] 29/22
unauthorized [2] 18/17 26/20
uncharted [1] 32/18
unconventional [4] 13/5 13/21 20/13 21/20
under [6] 6/9 12/15 12/24 14/2 18/25 19/22
underlying [3] 7/25 10/8 24/1
understand [2] 15/21 20/10
understandable [1] 7/17
understandably [1] 33/16
understood [3] 5/24 10/15 20/8

U

uniquely [1] 22/3
UNITED [2] 1/1 1/16
Universal [15] 10/2 14/3 16/8 16/10 16/13 16/14 16/18 23/4 27/10 27/21 27/25 28/15 29/12 29/21 30/8
universe [1] 17/8
unknown [1] 17/17
unless [1] 26/22
unpack [1] 22/1
unrebutted [2] 21/6 21/19
unscrupulous [1] 7/9
until [1] 4/9
up [10] 5/21 8/6 8/20 9/17 14/17 18/12 24/5 26/22 32/6 32/7
update [1] 4/16
upheld [1] 28/20
us [2] 15/17 20/9
use [9] 19/9 19/12 21/1 22/20 22/23 24/11 26/16 28/9 28/12
used [2] 10/24 28/17
user [4] 26/24 28/19 28/19 28/21
users [6] 17/14 18/5 18/15 18/17 18/21 27/6
uses [1] 26/15
using [5] 10/13 11/4 12/14 17/11 29/9

V

validate [2] 18/13 18/15
value [3] 22/16 32/11 32/12
vantage [1] 31/17
vary [1] 15/3
very [7] 7/16 9/15 9/21 13/16 18/8 24/10 25/2
video [1] 25/1
view [1] 28/18
visual [1] 24/22
void [1] 35/15
volume [1] 18/5

W

want [12] 5/3 5/22 9/17 11/1 14/19 22/15 24/11 25/7 25/8 25/24 29/15 33/15
warm [1] 14/17
warm-up [1] 14/17
was [33] 5/16 10/9 10/10 11/12 13/24 15/5 15/13 15/14 16/15 16/18 16/22 16/23 17/2 17/24 18/3 18/3 18/14 18/17 20/25 21/8 21/19 21/20 21/21 21/23 22/2 25/10 25/11 25/18 27/13 27/24 28/16 29/2 29/5
wasn't [2] 25/14 29/4
watch [1] 25/1
water [1] 32/18
WATKINS [2] 2/7 3/12
way [15] 5/21 6/14 10/16 11/1 18/4 18/5 23/1 27/5 27/20 29/3 30/16 31/20 32/7 32/15 33/16
ways [4] 17/22 21/3 31/11 32/6
we [50]
we're [7] 3/7 4/24 16/4 23/4 23/18 29/7 29/8
we've [3] 14/23 16/20 31/18
WEB [1] 1/6
Wednesday [2] 1/11 33/12
week [3] 5/12 6/1 33/6
weight [1] 13/8
WEINBLATT [3] 1/20 1/21 3/7
welcome [1] 31/10
well [14] 4/7 4/18 5/22 6/18 10/23 10/23 11/4 13/12 16/10 17/1 19/18 20/8 28/5 32/19
well-known [1] 10/23
were [9] 10/14 13/18 17/20 17/21 19/14 21/9 25/13 28/6 28/20
what [27] 3/21 8/5 9/2 9/21 9/24 11/23 11/23 11/24 14/17 15/13 15/14 15/17 18/12 21/8 21/11 21/24 23/13 23/15 24/8 25/18 27/13 28/22 29/14 30/6 31/1 32/1 33/9
what's [3] 16/19 27/2 31/7
when [10] 7/15 14/1 15/7 17/9 17/12 26/4 28/21 31/2 31/12 31/17
where [12] 8/2 12/3 12/4 18/21 21/12 21/18 22/21 22/21 23/8 24/13 24/16 26/14
whereas [2] 26/21 28/16
whether [2] 15/7 20/23
which [12] 6/22 11/4 11/8 13/1 15/4 17/13 17/14 17/15 19/4 29/12 30/16 31/8
who [7] 3/13 4/7 4/19 4/19 5/20 32/21 33/18
who's [3] 3/16 5/3 30/12
whole [5] 4/8 11/21 11/22 13/7 22/24
why [7] 16/8 19/1 20/7 20/12 23/3 23/13 30/20
widely [1] 28/13
will [4] 3/13 9/24 32/4 33/20
willing [1] 33/13
Wills [2] 20/21 21/6
Wilmington [2] 1/14 35/11
window [1] 28/22
within [6] 6/1 7/24 8/6 8/20 27/24 30/24
without [3] 25/11 25/16 35/16
WITNESS [1] 35/18
won [1] 33/3
won't [2] 12/5 20/2
word [2] 13/17 13/17
words [1] 20/6
work [1] 17/6
works [3] 17/4 17/6 17/18
world [5] 7/17 11/2 11/3 15/20 17/20
worry [1] 16/3
worth [2] 14/18 15/25
would [21] 3/21 4/15 5/5 6/1 9/15 11/7 13/23 14/17 14/24 15/20 21/17 22/1 25/16 25/17 28/7 32/5 32/6 32/7 32/21 32/23 32/24
write [2] 30/7 30/9
written [3] 8/25 10/22 29/18
wrongly [1] 13/6
wrote [1] 30/10

Y

yeah [1] 15/19
year [5] 5/16 15/14 17/21 18/1 35/19
years [4] 15/5 15/10 15/11 17/1
yes [8] 5/5 9/19 9/19 9/24 23/20 27/18 29/20 33/10
yet [2] 5/8 31/16
you [100]
you'll [3] 7/24 8/15 30/21
you're [10] 4/9 6/14 8/1 10/13 10/13 23/15 27/3 27/25 31/17 32/18
you've [4] 4/12 17/14 25/7 33/3
you've won [1] 33/3
your [53]
Your Honor [8] 3/6 5/6 14/14 22/14 24/22 27/11 27/15 32/5

Z

ZUCKER [2] 2/8 3/14